

U.S. Department of Justice

United States Attorney
Eastern District of New York

*610 Federal Plaza*
*Central Islip, New York 11722*

September 15, 2025

Honorable Joanna Seybert
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re: <u>Chan v. Almodovar, et. al.</u>,
      25-CV-5095 (Seybert, J.)

Dear Judge Seybert:

  This Office represents Defendants Judith Almodovar, in her official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Todd Lyons, in his official capacity as Acting Director U.S. Immigration and Customs Enforcement ("ICE"); Kristi Noem, in her official capacity as Secretary of Homeland Security; Pam Bondi, in her official capacity as Attorney General; U.S. Department of Homeland Security; and U.S. Immigration and Customs Enforcement ("USCIS")(collectively "Defendants" or the "government") in the above referenced matter.

  This letter is respectfully submitted pursuant to Your Honor's Order dated September 14, 2025 directing the government to respond to Petitioner's "Application for Emergency Relief" (Docket Entry ("DE") 30) by today at 9:30 a.m. and in advance of the telephone conference scheduled with the Court at 3:00 p.m. today.

  Petitioner is essentially seeking a reconsideration of the Court's ruling on Friday, September 12, 2025 based upon his fundamental misunderstanding of the time period within which Petitioner could remain at Nassau County Correctional Facility ("NCC"). In doing so, Petitioner has accused the government of making misrepresentations to the Court based upon the amount of time the Petitioner could be held at NCC. DE 30 at page 2 ("Is there any mechanism by which the Government could detain Mr. Chan in or around the Eastern District of New York? The Government represented that there is not.") Petitioner continues that because the government "can temporarily relocate [petitioner] for the Government's own purposes and thereby restart the 72-hour clock, certainly it can do so when asked to do so by the Court…" <u>Id.</u>

This misconception by Petitioner that the government can simply "restart" the 72-hour with "minimal effort" for its own purposes completely misconstrues the conference and the subsequent email exchange. Moreover, it was based upon unknown information, which is addressed below.

First, at the conference the Court asked the government if Petitioner could remain at NCC for another "five or ten days" or even "three more days" until a hearing was held. See Transcript of Proceedings ("TR"), attached hereto, at pp. 5, 10. The government responded that Petitioner could only stay at NCC for 72 hours because his classification as a high-risk individual (due to his prior conviction for murder, for which he was incarcerated for approximately 20 years) prevented him from being transferred to a low-risk facility within the Eastern District of New York. Id. The government correctly indicated to the Court, based upon information known to it at the time, that Petitioner would be picked up by ICE agents at NCC the next day, September 13, 2025. Tr. at pp. 9,19. The Court also suggested that a transfer in the "late afternoon would work really well." Id. at p. 19.

Next, as a courtesy, and to facilitate counsel's ability to confer with his client, the government, after learning the actual transport team would arrive on Sunday, September 14, 2025, notified counsel that Petitioner would be transferred on September 14, 2025. See DE 30 at Exhibit A, Email exchange.  The reason that Petitioner's departure date was September 14, 2025, which this Office learned only after the September 12, 2025, hearing, and in preparation for its response to Petitioner's order to show cause, was that Petitioner had been removed from the NCC and taken for processing with the expectation that Petitioner would be transported to the Moshannon Valley Processing Center. However, while awaiting transportation, ICE was informed of the Order issued in the Southern District of New York which enjoined ICE from removing Petitioner from the Eastern District of New York. In compliance with that Order, ICE returned Petitioner to the NCC temporarily.[1]

Petitioner's suggestion that the government could "restart," with "minimal effort" the 72-hour clock is based on an incorrect belief by Petitioner's counsel that Petitioner had been discharged from NCC and taken for administrative processing before being returned to the NCC. Granted, neither this Office nor, apparently, Petitioner's counsel, was aware on September 12 of the fact that Petitioner had actually been discharged from NCC to be processed for transportation to Moshannon, nor that he was only returned to the NCC in order to avoid violating the order from the Southern District. Nonetheless, there is nothing "minimal" about removing a high-risk detainee from the custody of NCC and then transferring the detainee back to NCC. More importantly, unlike the situation that occurred here, which involved ICE following its procedures and complying with the agreement with the NCC in good faith, Petitioner's suggestion would require ICE agents to take Petitioner out of custody at NCC, drive him to another location and then drive him back to NCC for no apparent reason. Such a process, which this Court should not endorse, would be an intentional violation of ICE's agreement with the NCC.

---

[1] The government intends to file a declaration later today in connection with its opposition to Petitioner's order to show cause.

Furthermore, Petitioner was transferred to the facility in Moshannon, Pennsylvania yesterday. The government, in accordance with Your Honor's order, is arranging for Petitioner's appearance on September 17, 2025 by remote access.

        Respectfully submitted,

        JOSEPH NOCELLA, JR.
        United States Attorney

By:    /s/ Diane C. Leonardo
        Diane C. Leonardo
        Mary M. Dickman
        Thomas R. Price
        Assistant U.S. Attorneys
        (631) 715-7854