1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2

3    ------------------------------X
     YUN CHAN,
4                                  :  25-cv-5095
                                      (JS)
5            Plaintiff,
                                   :  United States Courthouse
6      -against-                      Central Islip, New York

7    JUDITH ALMODOVAR, et al.,
                                   :  September 12, 2025
8            Defendants.              4:50 p.m.
     ------------------------------X
9
                    TRANSCRIPT OF CONFERENCE
10               BEFORE THE HONORABLE JOANNA SEYBERT
                  UNITED STATES DISTRICT COURT JUDGE
11

12   APPEARANCES:

13   For the Plaintiff:      ANDREW WIKTOR, ESQ.
                             Via Telephone
14

15

16
     For the Defendants:     JOSEPH NOCELLA, ESQ.
17                           UNITED STATES ATTORNEY
                             BY: DIANE LEONARD, AUSA
18                               THOMAS RUSSELL PRICE, AUSA
                                 MARY DICKMAN, AUSA
19                           100 Federal Plaza
                             Central Islip, New York 11722
20

21

22
     Official Court Reporter:    Paul J. Lombardi, RMR, FCRR
23   Ph. (631) 712-6106          100 Federal Plaza - Suite 1180
     Fax (631) 712-6122          Central Islip, New York 11722
24
                  Proceedings recorded by mechanical stenography.
25                    Transcript produced by CAT.

1          THE CLERK:  Calling civil case 25-5095, Yun Chan

2    verse Judith Almodovar, et al.

3          Counsel, please state your appearances for the

4    record.

5          MR. WIKTOR:  Andrew Wiktor, counsel for

6    petitioner Yun Chan.

7          MR. PRICE:  Good afternoon, your Honor.

8    Assistant US Attorney Thomas Price on behalf of

9    defendants.

10          THE COURT:  Mr. Price, you are going to have to

11    speak a lot louder.

12          I'm on a cell phone in a hotel room a couple

13    thousand miles away from the courthouse.  So really speak

14    loudly.

15          MR. PRICE:  Yes, your Honor.

16          Assistant United States Attorney Thomas Price on

17    behalf of all defendants.

18          THE COURT:  This application is brought by

19    plaintiff or defendant?

20          MR. PRICE:  By defendant, your Honor.

21          THE COURT:  And what is your application, if you

22    would?

23          MR. PRICE:  We are seeking to modify the order

24    that was entered in the Southern District of New York that

25    restricts defendants from moving the petitioner outside of

1    the Eastern District of New York.

2          THE COURT:  And, Ms. Leonardo or Mr. Price, what

3    is your response to that application?

4          MR. PRICE:  I'm sorry, your Honor.

5          That was Thomas price for the defense.  We are

6    the ones moving.

7          THE COURT:  Okay.

8          What's your response?

9          MR. WIKTOR:  Your Honor, if I may.  This is

10   Andrew Wiktor on behalf of petitioner.

11          I believe that that was respondent.  I'm also on

12   the telephone, but I believe that was respondent

13   indicating that respondents are making an application to

14   modify the order to allow Mr. Yun to be transferred

15   outside of the Eastern District of New York and we, as

16   petitioner, oppose that application.  I heard about this

17   for the first time 15 minutes ago, but we oppose that

18   application, your Honor.

19          THE COURT:  And the basis for your opposition is

20   that it will be difficult for you to meet with your client

21   and prepare on the habeas, is that it?

22          MR. WIKTOR:  That is exactly it, your Honor.

23          And one other piece on that is currently there

24   is a hearing that was ordered by the court in the SDNY

25   which I understand is still in effect per that court's

4

1  order that would have a hearing scheduled for Monday,

2  September 22nd and, in addition to being able to confer

3  with our client prior to that hearing, I'm actually about

4  to head to the prison now to meet with him, we would also

5  like to bring him to that hearing and if he's transferred

6  out of the district, obviously depending on where, it

7  would make that much more challenge.

8       THE COURT:  And, Mr. Price, what's the

9  government's response on that?

10      MR. PRICE:  Your Honor, the reason that the

11 government is making this motion is that the basis for

12 holding him in Nassau County is that ICE has an agreement

13 with the county detention facility.

14      But that limits the holding period to no more

15 than 72 hours, which means he would need to be moved by

16 some time tomorrow.  At that point ICE has to pick him up.

17 There is another ICE detention facility within the

18 Eastern District of New York.  The only options that are

19 available would be to take him back to the

20 Southern District, 26 Federal Plaza, but that's not really

21 a detention facility.  There's no showers or other

22 facilities there.  They basically have to just hold him

23 there.

24      The other option is they have space available in

25 a facility in Pennsylvania, I believe it's Moshannon,

1    Pennsylvania, and that's where ICE would like to move him

2    to.

3            THE COURT:  Have you reached out to Nassau

4    County Correctional Facility to see if the petitioner can

5    remain there for say another five or ten days until we can

6    have an emergency hearing and get this resolved?

7            MR. PRICE:  We, your Honor.

8            That was the conversation that my colleague,

9    Ms. Leonardo, had with the facility.  They confirm that

10    they cannot hold him for more than the 72 hours.

11            The reason that there's no other facilities that

12    could hold him in the Eastern District because the MDC

13    would be an option, but they can only hold low-risk

14    individuals and this individual has been classified as a

15    high-risk individual.  He's considered a danger.  He was

16    previously incarcerated for murder and he has a final

17    order of removal.

18            THE COURT:  He was convicted of murder and

19    served, what was it, 20 years and then was released by the

20    Bureau of Prisons, I believe?

21            MR. PRICE:  That is our understanding, your

22    Honor, yes.

23            MR. WIKTOR:  That is correct.

24            He was released in May of 2020 to ICE.  ICE then

25    put him on an order of supervision and he has been out of

1    any detention since November 13, 2020.  He has no

2    incidents since he's been released.  This is the first we

3    are hearing that he's been classified as a high risk.  Our

4    understanding is that ICE may have made the determination

5    that he is not a high risk when they released him in

6    November of 2020, almost five years ago, and our client

7    has also made every check-in with ICE over that five-year

8    period.

9          So this is, your Honor, news to me that he's

10    classified as high risk.

11          THE COURT:  How can you refute that, Mr. Price?

12          MR. PRICE:  Your Honor, I don't have a lot of

13    the background yet.  We haven't received that from ICE.

14          But, like I said, he has been incarcerated.  He

15    was incarcerated for 20 years for murder.  My

16    understanding, and I have not gotten confirmation of this

17    from ICE, is that once he had the final order of removal,

18    if he could not be removed from the country within a

19    90-day period under the statute, then they had to put him

20    on the supervised release that counsel has mentioned, and

21    there are issues with the fact that the background, if you

22    have seen it in the petition, he has no state,

23    effectively.  There was no place that he could be sent to

24    at the time.

25          That is my understanding of why he's put on the

1    supervised release.  It had nothing to do, to my

2    knowledge, with any decision by ICE that he was not high

3    risk.

4          THE COURT:  Well, it seems that for five years

5    there's been no incidents, not that that's necessarily a

6    sterling record.

7          However, my understanding is that the petitioner

8    cannot go back to the country of his birth, which is

9    China, because his parents never registered him as being

10   born in China since he violated the one child per family

11   rule that was applicable in China.  I assume that

12   deportation will not be to China.

13         Is that correct, Mr. Price?

14         MR. PRICE:  Your Honor, that, I cannot say at

15   this time.

16         I'm not sure where ICE now intends to deport him

17   to.

18         THE COURT:  Any response from plaintiff,

19   Mr. Wiktor?

20         MR. WIKTOR:  Yes, your Honor.

21         We have very little information.  We actually

22   have almost no information on why he was detained at all.

23   This was supposed to be a routine check-in.  He went to

24   check in on Monday, as scheduled.  When he got to the

25   building, after waiting in line for multiple hours, he was

8

1    told to come back the next day at 7 a.m.  He came back, of

2    course, the next day at 7 a.m.  He was accompanied by a

3    professor from Brooklyn Law School who escorted him into

4    the building.  Shortly thereafter it was obvious that he

5    was going to be detained.

6            The law professor asked multiple times, why is

7    he being detained?  What has changed?  Eventually she was

8    told that China is now issuing travel documents.  That is

9    the only information, your Honor, that we have as to why

10   he is being detained.  He was not given any notice that he

11   was potentially going to be detained.  He was not given

12   any hearing.  There was no process here whatsoever and I

13   have absolutely no idea what documents ICE does or does

14   not have.  We asked the AUSAs for whatever materials ICE

15   may have.  We haven't heard back.  Actually several of our

16   emails over the last day and a half have gone unanswered

17   from the AUSAs.

18           And we were not alerted that they were making

19   this application other than ten minutes before this call

20   when they said that there would be a conference.  The

21   short of it is that I don't know what basis is and,

22   frankly, from our perspective, Mr. Chan should be

23   released.  He should be released from Nassau County.  If

24   they can't keep him in the Eastern District of New York,

25   it seems as though he should be released entirely unless

9

1    they have a basis for why he's being detained and so far

2    we have not heard anything to suggest a legitimate reason

3    for his detention.

4              THE COURT:  Mr. Price.

5              MR. PRICE:  Yes, your Honor.

6              Again, that obviously goes to the substance that

7    would be addressed at a later time.  The issue that's

8    before us right now is what can be done with him tomorrow

9    when ICE needs to pick him up from Nassau County.  Again,

10   just releasing him is not really an option just because

11   they can't hold him there under the contract that they

12   have.  There are spaces available, again, Moshannon,

13   Pennsylvania, would be the best and the easiest option.

14   It's one that ICE already has a bed available for him.

15   And then these other issues can be addressed substantively

16   in due course.

17             And, I believe as noted earlier, we are

18   acknowledging that the court would retain jurisdiction

19   over this issues, even if the petitioner, himself, is

20   moved to Pennsylvania in the interim.

21             THE COURT:  So you are not going to bring up any

22   issues under *Khalil* or *Joyce* or a variety of other cases

23   that have come about, is that correct?

24             MR. PRICE:  That's correct, your Honor.

25             We are acknowledging that this court would

1    retain jurisdiction over the matter.

2          THE COURT:  And how far a trip is it from, say,

3    Manhattan to this location in Pennsylvania?

4          If you were to drive there, if plaintiff's

5    counsel was to drive to Pennsylvania where the petitioner

6    would be held, approximately how long would it be to get

7    there?

8          THE CLERK:  It's about --

9          THE COURT:  Six hours.

10         THE CLERK:  Depending which route you take it's

11   about six hours, Judge.

12         It's Monshannon Valley Processing Center.

13         THE COURT:  Counsel is pro bono, correct?

14         MR. WIKTOR:  That's correct, your Honor.

15         THE COURT:  I'm looking for a solution to

16   accommodate everyone.

17         In terms of ICE, they are on the fifth floor of

18   our building and they have been accommodating and not

19   making arrests in the courtroom or outside.  They are

20   extremely accommodating and that's a relationship that's

21   secure for both the general public and for people that

22   come before the court.  I'm trying to see if there is some

23   way that the government can basically ask Nassau County to

24   let the petitioner stay there for three more days until we

25   can get this on the calendar.  There is a pending motion

1  before the court.  I'd like to get that done and have some

2  type of direction.

3          I also think it would be fair for the

4  plaintiff's counsel to be able to respond to some of the

5  arguments and not get ten minutes' notice.

6          MR. WIKTOR:  And, your Honor, we appreciate

7  that.

8          And we, too, would like a solution here and I'd

9  like to just propose one other solution here.  In light of

10 the fact that the government has not proffered, even on

11 this call, a reason why Mr. Chan is being detained in the

12 first place, much less how he is, in fact, a flight risk,

13 because he is not a flight risk, an alternative option,

14 your Honor, could be to release him and when the hearing

15 is scheduled he will appear in court and to the extent

16 after that hearing it's adjudicated that he needs to be

17 detained we can deal with it then.

18         But he's not going anywhere, and he will appear

19 in court as required.  But, again, the government has not

20 proffered a reason why he's been detained in the first

21 place.

22         THE COURT:  Mr. Price, do you want to respond to

23 that?

24         MR. PRICE:  Your Honor, again, he is under a

25 final order of removal, and he cannot be released.

1          As counsel stated, and this is the

2    representation from counsel, petitioner was told at his

3    check-in earlier this week that China is now issuing

4    travel orders which would seem to indicate that China is

5    now willing to accept him.  And the whole reason, again,

6    that my understanding that he was put on the supervised

7    release in the first place was that they could not remove

8    him.  They had no place to send him to.

9          Now that they do, and apparently from, again,

10   from counsel's representation it appears that he's being

11   removed to China.  I have not received confirmation of

12   that, but the fact is he is under a final order of removal

13   and there is now a place that he can be removed to, then

14   ICE should, in fact, be allowed to retain him in custody.

15          MR. WIKTOR:  Your Honor, if I may.

16          Just to correct the record here, I am not

17   suggesting that there are travel documents.  I am not

18   suggesting that he is going to be removed to China.  I am

19   merely restating what an ICE officer told a professor at

20   Brooklyn Law School, that the reason why he was suddenly

21   being detained is because China is now issuing travel

22   documents.  The officer did not say that we have travel

23   documents for Mr. Chan.  We have asked if he does, if ICE

24   does have the travel documents.  We have not heard back

25   one way or the other.  I find it very difficult to believe

1    that they do, in fact, have travel documents, in light of

2    the fact that he does not have status in China.  He was

3    never registered with the Chinese government.  He is

4    stateless.  He has nowhere to go.  He has no intention to

5    go anywhere.

6         So I just want to correct the record that we are

7    not conceding that he's going to be deported to China.  In

8    fact, we have not seen any evidence of that whatsoever

9    beyond an officer saying that China generally is issuing

10   travel documents, nothing specific to Mr. Chan.

11        THE COURT:  Do you have anything specific,

12   Mr. Price, and can you get in contact with the ICE officer

13   that supposedly made this statement so we know that there

14   are travel documents?

15        Because if there are it's going to be a very

16   short hearing, for sure.

17        MR. PRICE:  Your Honor, I cannot offer

18   understanding more at this point.

19        As I said, I'm still waiting to get details from

20   ICE.  As counsel has not identified who the officer was

21   who made the statement I don't know that it would be

22   possible to obtain any sort of statements specifically

23   from the officer.

24        THE COURT:  When was the statement allegedly

25   made?

1              MR. WIKTOR:  On Tuesday morning, your Honor, and

2     I can get the name of the officer, if that's helpful.

3              THE COURT:  It would be helpful.

4              MR. WIKTOR:  If you will bear with me, I'm

5     sitting in my car working off of my phone but let me

6     see --

7              THE COURT:  Okay.

8              (There was a pause in the proceedings.)

9              MR. WIKTOR:  Sorry.  This is a little bit

10    difficult to do on the fly from my phone but I have a note

11    on this from professor Mogulescu who was there with him.

12             My understanding is that this was said by the

13    Associate Field Office Director Robinson.  I don't have a

14    first name, but Associate Field Office Director Robinson,

15    again, said this on Tuesday to Kate Mogulescu, professor

16    at Brooklyn Law School.

17             THE COURT:  Do you have a phone number for him?

18             MR. WIKTOR:  I do not have a phone number for

19    him.

20             THE COURT:  And he was out of the Manhattan

21    office?

22             MR. WIKTOR:  Correct, 26 Federal Plaza.

23             THE COURT:  Mr. Price, you think you might be

24    able to reach him?

25             Because if you do have these travel documents,

1    as you have indicated, you can pick him up at Nassau.

2              MR. PRICE:  Your Honor, we can certainly reach

3    out to ICE to try to get in contact with Director

4    Robinson, and I'm certain that if there are documents then

5    ICE would be providing that to us as soon as they can.

6              THE COURT:  Rather than have him shipped out to

7    Pennsylvania and extensive travel for a hearing, it might

8    expedite everything.

9              MR. PRICE:  We will certainly reach out to ICE

10   to try to get confirmation of that, your Honor.

11             But, again, just turning back to the issue here

12   that we are up against the 72-hour window tomorrow.

13             THE COURT:  Yes.

14             MR. PRICE:  These issues can certainly be

15   briefed more fully going forward.

16             But we need to be able to get authorization for

17   ICE to be able to get him and move him at this time in

18   order to comply with the 72-hour requirement.

19             THE COURT:  Is there anything else that you need

20   to add, Mr. Wiktor?

21             MR. WIKTOR:  I just would reiterate, your Honor,

22   that we have no reason to believe that this is a lawful

23   detention.

24             To the extent there are no travel documents and

25   there's no indication, whatsoever, that he should be

1    detained, we will likely move for his immediate release,

2    and I would still, again, in the event that this 72-hour

3    concern is insurmountable, I would again just offer that

4    he could be released temporarily until the hearing and we

5    would make sure that he appears at the hearing.

6            Mr. Chan is not a flight risk.

7            THE COURT:  It's very hard for the court to make

8    that determination.

9            You indicated that he made every meeting for the

10   last five years.  Times have considerably changed over the

11   last year or so.  So I have a certain matter of hesitation

12   in releasing him.  I don't have any address.  There's no

13   verification.  There's a whole variety of things that have

14   to be done.

15           Let me take a short pause and I want to speak to

16   my staff before I render a final decision.

17           MR. PRICE:  Thank you, your Honor.

18           MR. WIKTOR:  Yes, your Honor.

19           THE COURT:  Doreen, can we close the meeting and

20   reenter it and I want to speak on the phone with my staff.

21           THE CLERK:  We can have everybody step out and I

22   can have been counsel for plaintiff just drop off the call

23   and rejoin when we are ready.

24           THE COURT:  Okay.

25           THE CLERK:  Counsel for plaintiff, did you hear

1    me?

2              Would you please drop off the call.

3              MR. WIKTOR:  Yes, we will.

4              Just for clarity, are we planning to join back

5    up?

6              THE CLERK:  Correct.

7              MR. WIKTOR:  Okay.

8              THE CLERK:  I'll give you a call when we are

9    ready to rejoin and the judge is ready to rejoin the call.

10             MR. WIKTOR:  Excellent.

11             Thank you, very much.

12             THE CLERK:  You are welcome.

13             (There was a pause in the proceedings.)

14             THE CLERK:  Good afternoon.  This is Doreen.

15             I want to make sure I have counsel for the

16   plaintiff on the phone.

17             MR. WIKTOR:  Yes, Doreen.

18             THE CLERK:  Thank you, so much.

19             THE COURT:  All right.

20             So we have counsel for the government in the

21   courtroom.  I have had a brief discussion and looked at

22   various alternatives, but I don't think we have any that

23   are viable at this point.  So I am going to allow this

24   petitioner to be transferred to Pennsylvania, the ICE

25   facility.  But I'm moving up the hearing to September 17.

1    I am also requiring the government to get the paperwork

2    together that you have, or that ICE has that you have told

3    the court exists which would demonstrate that there is a

4    viable outstanding order for him to be deported to China

5    and that information, and any witnesses that you may have

6    with regard to your position that the defendant is a

7    danger and a flight risk.

8              Plaintiff's counsel would be available,

9    hopefully, in the next five days to meet with the

10   petitioner in Pennsylvania?

11             MR. WIKTOR:  Your Honor, if I may.

12             I am actually heading to Nassau County

13   Correctional Facility now.  I had a prescheduled meeting

14   with my client.  I'm not sure exactly when he plans to be

15   transferred but if I can respectfully request that it's

16   not until tomorrow, which I understand from what the

17   government said earlier, would be just around the 72-hour

18   mark, I would greatly appreciate that so I can confer with

19   him in person this evening.  And then, to the extent we

20   feel we need another correspondence with him between now

21   and Wednesday, we will make arrangements to make that

22   happen in Pennsylvania.

23             THE COURT:  That's an excellent plan and I'm

24   sure Ms. Leonardo and Mr. Price will accommodate you.

25             MR. PRICE:  Yes, your Honor.

1          It was our understanding that they were

2    intending to move him tomorrow.  So that should not be an

3    issue.

4          THE COURT:  Okay.

5          Tomorrow late afternoon would work really well.

6          MR. PRICE:  We will call and work on that.

7          I'm not sure what time they would be moving him

8    as of right now, your Honor.

9          THE COURT:  Hopefully counsel will be able to

10   have his meeting shortly and meet with his client.

11         That's been arranged for and hopefully it can be

12   resolved.  Does the petitioner speak English well enough

13   for you to converse with him?

14         MR. WIKTOR:  Yes, he does, your Honor.

15         THE COURT:  Good.

16         12 o'clock, September 17th, we'll have the

17   hearing.  Any submissions please make sure you get them in

18   sooner rather than later and that includes the statements

19   that ICE has made allegedly to the petitioner in terms of

20   travel documents.  Any questions?

21         MS. LEONARDO:  Your Honor, just one housekeeping

22   issue.

23         Your Honor's order today vacates the

24   Southern District order?  Or modifies the

25   Southern District order?

1           THE COURT:  Yes, I have.

2           MS. LEONARDO:  Thank you.

3           THE CLERK:  The briefing schedule is as follows,

4    respondent's opposition is moved up to September 15th and

5    petitioner's reply is moved up to September 16th with the

6    hearing September 17th at noon.

7           THE COURT:  All right.

8           Just make sure you are as concise as you

9    possibly can be and we'll see what we can do to get the

10   petitioner brought up, but I think that's going to be

11   really difficult.  However, he's in custody of ICE.  They

12   should be able to do it.  Or the US Marshals, I don't

13   think they have the facility to do it, but we'll hopefully

14   have him in person.  If not in person then I assume the

15   ICE facility has virtual meetings where we can tune it in

16   to the courtroom.

17          Is that correct, Mr. Price?  Ms. Leonardo?

18          MR. PRICE:  Your Honor, I cannot state for

19   certain but I believe that's something we would be able to

20   set up, yes.

21          THE COURT:  Good.  Make sure you make that

22   happen if you can't get him in person.

23          All right?

24          MR. PRICE:  Yes, your Honor.

25          THE COURT:  Have a good weekend, folks.

21

1              I believe that completes the conference.  If I

2       have anything else I'll put it in the form of an order.

3       Thank you.

4                   MR. PRICE:  Thank you, your Honor.

5                   MR. WIKTOR:  Thank you, your Honor.

6                   MS. LEONARDO:  Thank you, your Honor.

7                   (The matter concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25