UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X

YUN CHAN,

       Plaintiff-Petitioner,

    -against-

                               Civil Action No.
                               25-cv-5095 (JS)

Judith Almodovar, in Her Official
Capacity as ACTING FIELD OFFICE
DIRECTOR OF NEW YORK,
IMMIGRATION AND CUSTOMS
ENFORCEMENT; Todd Lyons, in his
official capacity as ACTING DIRECTOR
U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; Kristi Noem, in her
official capacity as SECRETARY OF
HOMELAND SECURITY; Pam Bondi, in
her official capacity as ATTORNEY
GENERAL; U.S. DEPARTMENT OF
HOMELAND SECURITY; and U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT.

        Defendants-Respondents.

--------------------------------------------------X

## RESPONDENTS' OPPOSITION TO THE PETITION FOR A WRIT OF HABEAS CORPUS

                           JOSEPH NOCELLA, JR.
                           United States Attorney
                           Eastern District of New York
                           Attorney for Defendant
                           610 Federal Plaza, 5th Floor
                           Central Islip, New York 11722

Mary M. Dickman
Thomas R. Price
Assistant U.S. Attorneys
(Of Counsel)

## Table of Contents

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 3

PROCEDURAL HISTORY .................................................................................... 5

ARGUMENT .................................................................................................... 8

I. THE MOTION FOR RELEASE FROM DETENTION SHOULD BE DENIED ..................... 8

    A. The Claim Is Jurisdictionally Barred ....................................................... 8

        1. 8 U.S.C. § 1252(a)(5), 1252(b)(9) Bars The Claim As A Challenge To Petitioner's Order Of Removal ............................................................. 8

        2. 8 U.S.C. § 1252(g) Bars The Claim As A Challenge To The Execution Of A Removal Order ................................................................................ 11

    B. Assuming, *Arguendo*, That the Court Determines That Jurisdiction Exists, Petitioner's Challenge to Detention Should Be Denied ....................................... 14

II. PETITIONER'S REQUEST FOR A STAY OF REMOVAL MUST BE DENIED .............. 15

    A. The Court Lacks Jurisdiction To Consider Petitioner's Request For a Stay of Removal ........................................................................................... 15

        1. This Request Is Jurisdictionally Barred by 8 U.S.C. § 1252(a)(5), 1252(b)(9) As a Challenge To Petitioner's Order of Removal .............................. 15

        2. This Motion Is Jurisdictionally Barred by 8 U.S.C. § 1252(g) as a Challenge To the Execution of a Removal Order ............................................ 19

    B. Assuming, Arguendo, That Jurisdiction Exists, Petitioner Has Failed to Set Forth Evidence Sufficient to Justifty a Stay of Removal ........................................ 19

    CONCLUSION ............................................................................................. 23

## Table of Authorities

*Achbani v. Homan*,
No. 17-cv-1512, 2017 WL 4227649 (D. Conn. Sept. 22, 2017) ............................................ 12

*Akhuemokhan v. Holder,*
No. 12-cv-1181, 2013 WL 6913170 (E.D.N.Y. Dec. 30, 2013) ............................................ 19

*Andoh v. Barr,*
No. 19 Civ. 8016, 2019 WL 4511623 (S.D.N.Y. Sept. 18, 2019) ......................................... 12

*Ashqar v. Hott,*
No. 19-cv-716, 2019 WL 2712276 (E.D. Va. June 5, 2019) ................................................. 21

*Asylum Seeker Advocacy Project v. Barr*,
409 F. Supp. 3d 221 (S.D.N.Y. 2019) .............................................................................. 9, 20-22

*Barros Anguisaca v. Decker*,
393 F. Supp. 3d 344 (S.D.N.Y. 2019) .............................................................................. 13, 20

*Bumu v. Barr*,
No. 20-cv-6742, 2020 WL 6465433 (W.D.N.Y. Nov. 3, 2020) ....................................... 12, 15

*Calderon v. Sessions*,
330 F. Supp. 3d 944 (S.D.N.Y. 2018) .............................................................................. 15, 21

*Camarena v. Director, I.C.E.*,
988 F.3d 1268 (11th Cir. 2021) ........................................................................................... 13

*Castaneda v. Perry*,
95 F.4th 750 (4th Cir. 2024) ............................................................................................... 3, 18

*Ceesay v. Bondi,*
No. 25-cv-3716, 2025 WL 1435615 (S.D.N.Y. May 16, 2025) ..................................... 11, 15

*Chocho v. Shanahan*,
308 F. Supp. 3d 772 (S.D.N.Y. 2018) ................................................................................ 12

*Clark v. Martinez*,
543 U.S. 371 (2005) ............................................................................................................ 16

*Delgado v. Quarantillo*,
643 F.3d 52 (2d Cir. 2011) ............................................................................... 10-11, 19, 21-22

*E.F.L. v. Prim*,
986 F.3d 959 (7th Cir. 2021) ............................................................................................... 13

*G.P. v. Garland*,
103 F.4th 898 (1st Cir. 2024) ............................................................................................. 3, 18

*Gondal v. USDHS*,
343 F. Supp. 3d 83 (E.D.N.Y. 2018) .................................................................................. 15

*Gustafson v. Alloyd Co. Inc.*,
    513 U.S. 561 (1995) ............................................................... 14

*Hardt v. Reliance Life Ins. Co.*,
    560 U.S. 242 (2010) .............................................................. 14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019) ........................................................... 14, 21

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) ............................................ 9-10

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) .............................................................. 21

*Jimenez Perez v. United States*,
    No. 25 Civ. 3400, 09 Cr. 159, 2025 WL 1558578 (S.D.N.Y. June 3, 2025) .................. 19, 22

*Joseph v. U.S. Attorney General*,
    No. 17-cv-5008, 2017 WL 6001776 (E.D.N.Y. Dec. 4, 2017) ............................ 19

*K.K. v. Garland*, No. 23-cv-6281
    2025 WL 274431(W.D.N.Y. Jan 23, 2025) ........................................... 22

*Leybinsky v. USCIS*,
    No. 19-cv-6154, 2021 WL 4407829 (E.D.N.Y. Sept. 26, 2021) ..................... 11, 12

*Lin v. Borgen*,
    No. 25-cv-5618, 2025 WL 2158874 (S.D.N.Y. July 30, 2025) ........................ 11, 15, 9, 21

*Lopez Galvez v. Noem*,
    No. 25-cv-3329, 2025 WL 1823549 (E.D.N.Y. July 1, 2025) ............................ 10

*Nieto-Ayala v. Holder*,
    No. 08 Civ. 8347, 2011 WL 3918156 (S.D.N.Y. Aug. 30, 2011) .................... 20, 23

*Noor v. Homan*,
    No. 17-cv-1558, 2018 WL 1313233 (E.D.N.Y. Feb. 26, 2018) ........................... 19

*Oliveira Jimenez v. Searls*,
    No. 22-cv-960, 2023 WL 11156340 (W.D.N.Y. Feb. 28, 2023) ........................... 22

*Oriakhi v. DHS*,
    762 F. Supp. 3d 183 (E.D.N.Y. 2025) .............................................. 9, 21

*Patel v. Garland*,
    596 U.S. 328 (2022) .............................................................. 13

*Rauda v. Jennings*,
    55 F.4th 773 (9th Cir. 2022) ..................................................... 13

*Reno v. Arab-American Anti-Discrimination Committee*,
  525 U.S. 461 (1999) ................................................................ 13

*Rodriguez v. Warden, Orange County Correctional Facility,*
  No. 23-cv-242, 2023 WL 2632200 (S.D.N.Y. Mar. 23, 2023) ...................... 10, 12-13, 15, 21

*Royale v. INS,*
  No. 10-cv-2105, 2010 WL 2348651 (E.D.N.Y. June 9, 2010)(5) ......................... 20

*Ruiz-Martinez v. Mukasey*,
  516 F.3d 102 (2d Cir. 2008) ........................................................ 9

*S.N.C. v. Sessions,*
  No. 18 Civ. 7680, 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018) ......................... 21

*Scott v. Napolitano*,
  618 F. Supp. 2d 186 (E.D.N.Y. 2009) .............................................. 20, 22

*Singh v. USCIS,*
  878 F.3d 441 (2d Cir. 2017) ........................................................ 10

*Spina v. DHS*,
  470 F.3d 116 (2d Cir. 2006) ........................................................ 9

*Tavares-Tejada v. Mayorkas*,
  No. 22-cv-918, 2022 WL 17413607 (W.D.N.Y. Dec. 5, 2022) ........................ 20-22

*Torres-Jurado v. Biden,*
  No. 19 Civ. 3595, 2023 WL 713898 (S.D.N.Y. Oct. 29, 2023) ....................... 15, 22

*Troy as Next Friend Zhang v. Barr*,
  822 Fed. Appx. 38 (2nd Cir. 2020) .............................................. 13, 22

*United States ex rel Accordi v. Shaugnessy*,
  347 U.S. 260 (1954) ................................................................ 1

*Vasquez v. United States*,
  No. 15 Civ. 3946, 2015 WL 4619805 (S.D.N.Y. Aug. 3, 2015) ....................... 13, 22

*You Xiu Qing v. Nielsen*,
  321 F. Supp. 3d 451 (S.D.N.Y. 2018) ........................................... 15, 21-22

*Zadvydas v. Davis*
  533 U.S. 678 (2001) ............................................................ 1-3, 16-18

**<u>Federal Rules, Statutes and Regulations</u>**

5 U.S.C. § 706 ................................................................................................ 1

8 U.S.C. § 1231 ................................................................................... 1-2, 5, 15-16

8 U.S.C. § 1252................................................................................... passim

Immigration and Nationality Act § 237 .......................................................... 4

Illegal Immigration Reform and Immigration Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996) ("IIRIRA") § 306 ............................................. 13

8 C.F.R. § 241.13 .......................................................................................... 3, 18

**<u>New York Statutes</u>**

NY Penal Law 125.25 .................................................................................... 4

## PRELIMINARY STATEMENT

Defendants-Respondents ("Respondents"),[1] through their attorney, Joseph Nocella, Jr., United States Attorney for the Eastern District of New York, Mary M. Dickman and Thomas R. Price, of counsel, respectfully submit this memorandum of law in opposition to Plaintiff-Petitioner Yun Chan's ("Petitioner") Petition for a Writ of Habeas Corpus ("Petition"), request for a stay of removal and other injunctive relief (ECF Dkt. ## 1, 6).

Petitioner is a Chinese national who entered the United States unlawfully, was convicted by New York State of murder, who served a prison sentence, and who has been ordered removed as an aggravated felon, and that removal order, which was not contested, is now, final. Because Petitioner's removal is reasonably foreseeable, Immigration and Customs Enforcement (ICE) detained him six days ago under 8 U.S.C. § 1231 ("Section 1231"), pending his removal to China.

The Petition (ECF Dkt. # 1) asserts that his detention, which commenced six days ago, on September 9, 2025, is unlawful because it supposedly: (1) violates the due process clause of the Fifth Amendment and *Zadvydas v. Davis*, 533 U.S. 678 (2001) (Count I); (2) violates the Fifth Amendment's due process clause, the Immigration and Nationality Act ("INA") and the regulations promulgated thereunder (Count II); (3) violates the provisions of the Administrative Procedure Act ("APA") and *United States ex rel Accordi v. Shaugnessy*, 347 U.S. 260, 268 (1954), doctrine because Respondents failed to comply with existing federal statutes and rules (Count III); and (4) constitutes an APA violation pursuant to 5 U.S.C. § 706(2)(A) because is it an action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law (Count

---

[1] Petitioner brings this action against Judith Almodovar, in her official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement ("ICE"); Todd Lyons, in his official capacity as Acting Director of ICE; Kristi Noem, in her official capacity as Secretary of Homeland Security; Pam Bondi, in her official capacity as Attorney General; U.S. Department of Homeland Security ("DHS"); and ICE.

IV). Petition ¶¶ 69-85.[2]

The Court should deny Petitioner's request for habeas corpus. First, no jurisdictional basis exists for Petitioner's challenge to his detention by ICE. Congress has enacted jurisdiction-stripping statutes that preclude challenges to removal -- 8 U.S.C. § 1252(a)(5) ("Section 1252(a)(5)") and 8 U.S.C. § 1252(g) ("Section 1252(g)") – and both statutes also bar challenges to detention pending removal. The Section 1252(a)(5) jurisdictional bar encompasses claims of due process violations and other violations of constitutional provisions. The jurisdictional bar set forth in Section 1252(g) applies to all claims challenging the execution of a removal order, including, *inter alia*, claims of constitutional violations.

Assuming, *arguendo*, that the Court has jurisdiction over Petitioner's request for habeas corpus, his application must nevertheless be denied. First, Petitioner's detention is mandatory under 8 U.S.C. § 1231 and, as the Supreme Court held in *Zadvydas*, because Petitioner has been detained for less than six months, his current detainment presents no statutory or due process violation. Second, Petitioner has not met his burden to demonstrate that his removal is not "foreseeable," as ICE has affirmatively stated its intent to remove Petitioner to China as soon as it receives notification that China will accept him -- and despite not yet obtaining documents to remove Petitioner to China, other courts across the country have held that ICE's inability to obtain an immediate travel document has no bearing on whether his removal is "foreseeable," as that term

---

[2] Petitioner also filed an Emergency Motion for Temporary Restraining Order ("TRO") (ECF Dkt. # 6) enjoining his removal from the United States and from the Eastern District of New York. At the hearing conducted with respect to Petitioner's Application for Emergency Relief (ECF Dkt. # 30) by Your Honor by telephone earlier today, September 15, 2025, Petitioner's counsel stated on the record that he understood the TRO to have been addressed – and resolved – at the conference conducted before Your Honor by telephone on September 12, 2025. *See* Transcript of Conference Before the Hon. Joanna Seybert, United States District Court Judge, conducted September 12, 2025, a copy of which has been filed as ECF Dkt. # 13-1; *see also* Respondents' Letter Opposing Application for Emergency Relief, filed September 15, 2025 (ECF Dkt. # 31). Accordingly, Respondents do not address these arguments in this submission.

is contemplated in *Zadvydas*. Third, additional due process is not warranted because "the *Zadvydas* standard is due process," and Petitioner fails to demonstrate any exceptional circumstances to warrant departure from the *Zadvydas* standard. *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024); *G.P. v. Garland*, 103 F.4th 898, 902-03 (1st Cir. 2024). Fourth, Petitioner's claims that ICE violated its own regulations on Petitioner's revocation of supervised release and custody determinations, by allegedly failing to provide him proper notice of his detention and the opportunity to challenge his detention, are contradicted by the record evidence, which demonstrates that Petitioner received the process which he is due under 8 C.F.R. § 241.13(i)(2).

To the extent that the Petition can be interpreted as a request for a stay of removal, such relief must be denied. Even if the Court had jurisdiction to entertain such a request, which it does not, Petitioner has set forth no evidence that his removal is anything other than inevitable.

Therefore, Respondents respectfully request that the Court decline to issue a Writ of Habeas Corpus and deny the Petition, including Petitioner's request for a stay of removal.

## STATEMENT OF FACTS

Petitioner is a native and citizen of China. Declaration of Carla Calidonio, dated September 15, 2025 ("Calidonio Decl."), submitted herewith. Calidonio Decl. ¶ 3. Petitioner, who is 49 years old, states that his birth was not registered with the Chinese government, because he was his parents' fourth-born child, and at that time China maintained a policy limiting each family to one child. Petition ¶ 28; *see* Petitioner's Memorandum of Law in Support of Emergency Motion for a Temporary Restraining Order, filed September 9, 2025 (ECF Dkt. # 6-1) ("Petitioner's TRO Mem.") p. 2. He contends that he was never issued a birth certificate, an identification number or any document that identifies him as having been born in China or having resided there. Petition ¶¶ 28, 46-48; Petitioner's TRO Mem. pp. 2, 5-8.

Petitioner entered the United States on March 28, 1994, at Newark International Airport. Calidonio Decl. ¶ 4. Petitioner acknowledges that, upon his arrival in Newark, he presented false documentation to U.S. Immigration authorities. Petition ¶¶ 36; Petitioner's TRO Mem. p. 3. Petitioner alleges that his entry into the United States was arranged "by a so-called 'Snakehead' organization, a criminal gang" and the process constituted illegal human trafficking. Petition ¶¶ 2-3, 29, 31-42; Petitioner's TRO Mem. pp. 2-5. Petitioner alleges that the gang, *inter alia,* subjected him to abuse, coerced him into joining in its criminal activities and, ultimately, compelled him to participate in robbing and killing "a rival trafficker." Petition ¶¶ 2-4, 32-42; Petitioner's TRO Mem. pp. 2-5.

On January 17, 1997, Petitioner was convicted of Murder in the Second Degree, Intentional Homicide in violation of New York Penal Law 125.25(01). *Id.*; Calidonio Decl. ¶ 5. For this crime, which was committed in the course of a robbery, Petitioner was sentenced to a term of imprisonment of 25 years to life. Calidonio Decl. ¶ 5; Petition ¶43; Petitioner's TRO Mem. p. 5.

While Petitioner was serving his criminal sentence, removal proceedings were brought against him by U.S. Immigration and Nationality Services ("INS").[3] Calidonio Decl. ¶ 6. Petitioner was served with a Notice to Appear ("NTA") at the Ulster Immigration Court located at the Ulster Correctional Facility in Napanoch, New York. Calidonio Decl. ¶ 6; Exhibit A to Calidonio Decl. The NTA charged Petitioner with removability under Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 237(a)(1)(A), and 212(a)(7)(A)(i)(I). Calidonio Decl. ¶6; Exhibit A to Calidonio Decl. The NTA alleged that Petitioner was deportable because he is not a citizen or national of the United States; he is a native and citizen of China; when he was admitted into the United States, he "did not then possess or present a nonimmigrant visa, border crossing card, or other document

---

[3] INS is precursor entity of what in 2003 became the Department of Homeland Security (DHS), and its duties are divided among the DHS components, including ICE.

4

valid for entry into the . . . United States"; and because he was convicted of the crime of murder in the second degree. Calidonio Decl. ℙ 7; Exhibit A to Calidonio Decl.

On March 20, 2000, an Immigration Judge entered an Order of Removal, on the basis of (1) Petitioner's submission of false documentation upon his entry into the United States at Newark International Airport, and (2) his murder conviction. Calidonio Decl. ℙ 8; Order of Removal, entered March 20, 2000, a copy of which is attached to the Calidonio Decl. as Exhibit B. Consistent with the allegation set forth in the NTA that Petitioner is a citizen of China, the Immigration Judge ordered that he be removed to China. *Id.* Petitioner did not appeal the order. Calidonio Decl. ℙ 9. Thus, Petitioner's order of removal is administratively final. Calidonio Decl. ℙ 9.

Twenty years later, on May 22, 2020, Petitioner was released from state court penal facilities into the custody of ICE, pursuant to 8 U.S.C. § 1231. Calidonio Decl. ℙ 10. On November 13, 2020, Petitioner was released from ICE custody on an Order of Supervision, Form I-220B. Calidonio Decl. ℙ 11. The Order of Supervision set forth the conditions of his release, including the requirement to report to ICE for periodic check-ins as directed. Calidonio Decl. ℙ 11.

On September 9, 2025, Petitioner appeared for a required check-in at the ICE New York Field Office, which is located at 26 Federal Plaza, in Manhattan. Calidonio Decl. ℙ 12. While there, Petitioner was advised that his release on the Order of Supervision was being revoked and that he would be taken into ICE custody pending removal. Calidonio Decl. ℙ 12. He was served with a Notice of Revocation of Release and a Warrant of Removal/Deportation, both of which were dated September 9, 2025. Calidonio Decl. ℙℙ 12-13; Exhibits C to Calidonio Decl. Petitioner was provided with an informal interview and informed of his rights to notify the Consulate of China. Calidonio Decl. ℙℙ 14-15. Thereafter, Petitioner was temporarily transferred to Nassau County Correctional Center ("NCC") in East Meadow, New York, pending processing and the identification of long-term bedspace available for his classification level for detainment, which is

5

high-risk level, the classification for individuals, such as Petitioner, convicted of violent crimes, including murder. Calidonio Decl. ¶¶ 16-17.

## PROCEDURAL HISTORY

Late on the evening of September 9, 2025, at approximately 11:07 p.m., Petitioner, through his counsel, filed the Petition (ECF Dkt. # 1), seeking a writ of habeas corpus, and the Emergency TRO Motion (ECF Dkt. ## 6 – 6-6) in the United States District Court for the Southern District of New York.

On September 10, 2025, at approximately 9:30 a.m., Judge Paul A. Engelmayer entered an Order (ECF Dkt. # 14) stating that "[s]olely to preserve the Court's jurisdiction over this matter pending a ruling [by the district judge who would supervise the case on a permanent basis, who had yet to be assigned] on the pending motion for a TRO, plaintiff-petitioner shall not be removed from the United States unless and until the assigned judge orders otherwise." Shortly thereafter, the case was assigned to Judge Margaret M. Garnett, who promptly entered an Order to Show Cause (ECF Dkt. # 21) setting a briefing schedule for the Petition and the TRO. The Order to Show Cause further stated as follows: "Pending consideration of the Petition, Respondents are hereby RESTRAINED  from transferring the Petitioner out of the Southern District of New York and, relatedly, the United States of America."

Later that day, Respondents filed a letter-motion (ECF Dkt. # 23) requesting that the case be transferred, on the grounds that venue did not lie in the Southern District of New York. The letter-motion stated that on the afternoon of September 9, 2025, at approximately 5:09 p.m. – nearly six hours prior to the filing of the Petition and the Emergency TRO Motion -- Petitioner had been transferred to the NCC, which is located in the Eastern District of New York. *Id.* Accordingly,

Respondents requested that the case be transferred to the United States District Court for the Eastern District of New York. *Id.* Respondents stated that Petitioner's counsel had been informed that Petitioner had already been transferred to NCC and that Petitioner's counsel did not oppose the transfer of the case to the Eastern District of New York. *Id.* Respondents added that Petitioner's counsel requested that the Court extend the stay of removal until and unless the transferee court entered an order to the contrary, and that Petitioner's counsel requested that the Court enjoin ICE from transferring Petitioner outside the Eastern District of New York. *Id.* Respondents stated that they did not oppose the request to maintain the stay of removal, but they did oppose the request that ICE be enjoined from transferring Petitioner outside the Eastern District of New York. *Id.*

On September 10, 2025, ICE was informed of long-term bedspace suitable for Petitioner's high-risk level classification at Moshannon Valley Processing Center ("Moshannon") in Philipsburg, Pennsylvania.

On September 11, 2025, Petitioner filed a letter (ECF Dkt. # 24) reiterating his opposition to his continued detention and requesting that ICE be enjoined from moving the location of his custody pending a ruling of the transferee court as to this issue. That same day, September 11, 2025, Judge Garnett entered an Order (ECF Dkt. # 25) directing that Petitioner's case be transferred to the United States District Court for the Eastern District of New York. Judge Garnett's Order also enjoined Respondents from (1) removing Petitioner from the continental United States and (2) removing Petitioner from the Eastern District of New York, unless and until the transferee court ordered otherwise.

That day, September 11, 2025, ICE transferred Petitioner to ICE's Central Islip, processing space to complete processing and to await transport to Moshannon. While Petitioner was in transport, ICE was informed of Judge Garnett's Order transferring Petitioner's habeas proceeding to the United States District Court for the Eastern District of New York and enjoining ICE from

transferring Petitioner outside the Eastern District of New York's jurisdiction. As a result, ICE returned Petitioner to NCC temporarily and requested that the United States Attorney's Office for the Eastern District of New York make an emergency request for modification of the order enjoining Petitioner's transfer from the Eastern District of New York. This request was necessitated based upon the agreement between ICE and Nassau County, which limited the length of time that the NCC was permitted to hold an individual detained by ICE, *i.e.* 72 hours. There are no ICE facilities in the in the Eastern District of New York that are capable of accepting a high-risk detainee.

Later on September 11, 2025, the United States District Court for the Eastern District of New York accepted the transferred case and assigned a docket number. ECF Dkt. # 26. The case was initially assigned to the Honorable Natasha C. Merle,  then reassigned to the Honorable Joanna Seybert.

On September 12, 2025, the Court conducted a 4:30 p.m. telephone conference with respect to Judge Garnett's Order enjoining Petitioner's transfer from the Eastern District of New York. The United States Attorney's Office raised the issue with the Court because Petitioner's time period to remain in NCC was due to expire. At the conclusion of the conference, Your Honor granted Respondents' request to modify Judge Garnett's Order to permit Petitioner to be transferred to Moshannon, with the provision that arrangements were to be made for Petitioner to appear by live video feed at a conference to be conducted on September 17, 2025, at 12 noon. Minute Entry (ECF Dkt. # 28).

On September 12, 2025, ICE was informed that Judge Garnett's Order had been orally modified by Your Honor to permit ICE to proceed with transferring Petitioner to Moshannon no earlier than September 13, 2025, after Petitioner's counsel had been given the opportunity to meet with him Petitioner at NCC. On September 14, 2025, after a brief stop at ICE's hold room at 26

Federal Plaza, in Manhattan, in preparation for transfer, ICE transferred Petitioner to Moshannon, to remain detained pending preparation for his removal to China. Upon Petitioner's request for reconsideration on September 13, 2025, earlier today, the Court reversed its earlier order and directed Respondents to physically produce Petitioner at the hearing scheduled for September 17, 2025.

## ARGUMENT

## I.    THE MOTION FOR RELEASE FROM DETENTION SHOULD BE DENIED

### A.  The Motion Is Jurisdictionally Barred

#### 1.  8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) Bar The Claim Because It Challenges Petitioner's Order Of Removal

8 U.S.C. § 1252(a)(5) provides in relevant part that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." As a corollary to § 1252(a)(5), 8 U.S.C. § 1252(b)(9) provides that ("[j]udicial review of all questions of law and fact" arising from a removal proceeding "shall be available only in judicial review of a final order" of removal, and "no court shall have jurisdiction . . . by any other provision of law . . . to review such an order or such questions of law or fact"). Section 1252(a)(5) gives the courts of appeals exclusive jurisdiction over review of final orders of removal. *Ruiz-Martinez v. Mukasey,* 516 F.3d 102, 105 (2d Cir. 2008). The "clear intent'" of Congress in enacting § 1252(a)(5) was "'to have all challenges to removal orders heard in a single forum,' i.e., the courts of appeals." *Spina v. DHS*, 470 F.3d 116, 124 (2d Cir. 2006) (quotation omitted). "'[T]aken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue – whether legal or factual – arising from *any* removal-related activity can be reviewed *only* through' a petition for review filed with an appropriate court of appeals." *Asylum Seeker Advocacy Project v. Barr*, 409 F. Supp. 3d 221, 224 (S.D.N.Y. 2019) (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)

(emphasis by *J.E.F.M.*)); *accord Rodriguez v. Warden, Orange County Correctional Facility*, No. 23-cv-242, 2023 WL 2632200, at *4 (S.D.N.Y. Mar. 23, 2023).

The Second Circuit has construed §§ 1252(a)(5) and 1252(b)(9) broadly to preclude district courts from exercising subject matter jurisdiction over an action that even "indirectly challeng[es]" an order of removal. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). In determining whether an action challenges an order of removal, the Second Circuit looks to "the substance of the relief that [the] plaintiff is seeking." *Id.*

*Delgado* is instructive. In *Delgado*, the alien who was subject to a final order of removal filed an action in district court to compel United States Citizenship and Immigration Services ("USCIS") to adjudicate her application for a waiver of inadmissibility. *Id.* at 53-54. The Second Circuit held that §§ 1252(a)(5) and 1252(b)(9) precluded the district court from exercising jurisdiction over the action, because the action was a challenge to the order of removal: if USCIS were ordered to adjudicate the application, and were to grant the waiver, she would satisfy a necessary requirement for adjustment of status, and if she then succeeded in having her status adjusted, her removal order would be rendered invalid. *Id.* at 55;[4] *accord, Singh v. USCIS*, 878 F.3d 441, 445-46 (2d Cir. 2017) (§ 1252(a)(5) precluded the district court from exercising jurisdiction over an action to compel USCIS to adjudicate the merits of the plaintiff's application for adjustment of status because ordering USCIS to consider that application could lead USCIS to approve that application, which in turn would lead to the nullification of his removal order); *Lopez Galvez v. Noem*, 25-cv-3229, 2025 WL 1823549, at *1 (E.D.N.Y. July 1, 2025) (Seybert, J.) ("§ 1252(a)(5) is a jurisdictional bar to [the Court's] consideration of Petitioner's indirect

---

[4] The Second Circuit also held that, due to the §§ 1252(a)(5) and 1252(b)(9) jurisdictional bars, there was no federal question jurisdiction for the two claims brought by Delgado, *i.e.*, claims under the APA and the Mandamus Act. *Id.*

challenge" to her removal order); *Leybinsky v. USCIS*, No. 19-cv-6154, 2021 WL 4407829, at *3 (E.D.N.Y. Sept. 26, 2021) (Kovner, J.) (§ 1252(a)(5) barred claim for district court order vacating the plaintiff's order of removal).

Notably, the § 1252(a)(5) jurisdictional bar encompasses claims of violations of constitutional provisions and statutes. *Delgado* held that § 1252(a)(5) barred claims of violations of the Due Process Clause, the Equal Protection Clause, and of the Administrative Procedure Act. *Delgado*, 643 F.3d at 54.

Consistent with *Delgado*, several district courts in this Circuit have held that § 1252(a)(5) bars, as a challenge to a removal order, a claim challenging ICE's detention of an alien for the purpose of removal. In a recent decision, *Lin v. Borgen*, No. 25-cv-5618, 2025 WL 2158874 (S.D.N.Y. July 30, 2025), ICE released Lin from detention because of difficulties in obtaining a travel document for him. Fifteen years later, ICE determined that it would be able to obtain the travel document and re-detained him. Lin then moved, *inter alia*, for an order releasing him from detention. *Id.* at *1. The court denied the motion because the relief sought an order releasing him from detention "would bar ICE from effectuating the removal order". *Id.* at 3.[5]

Another recent decision, *Ceesay v. Bondi*, 25-cv-3716, 2025 WL 1435615, at *2 (S.D.N.Y. May 16, 2025), held that § 1252(a)(5) bars an action for an order prohibiting ICE from detaining Ceesay for the purpose of removing him, because such an order would leave ICE without a

---

[5] *Zhu v. Genalo*, No. 25-cv-06523, 2025 WL 2452352 (S.D.N.Y. Aug. 26, 2025), which the Court referenced in the telephone conference conducted earlier today, appears to be distinguishable as the petitioner in that case was ordered removed because he illegally entered the country and his appeal of the order of removal was denied. He was not returned to China because as he alleged, China was not willing to repatriate its citizens. Zhu was placed under an order of supervision. In 2025, Zhu's order of supervision was revoked, but Zhu alleged he did not receive notice of the revocation. Here, Petitioner was ordered removed -- an order that he did not appeal -- based on his convictions for violent crimes. Further, Petitioner received notice of the revocation of his order of supervision.

mechanism to enforce the removal order. *Id.; accord Rodriguez*, 2023 WL 2632200, at *4 (S.D.N.Y. Mar. 23, 2023) (dismissing action because Rodriguez "seeks an end to his detention, which was undertaken for the precise purpose of effectuating his existing removal orders"); *Bumu v. Barr*, 20-cv-6742, 2020 WL 6465433, at * 3 (W.D.N.Y. Nov. 3, 2020) (§ 1252(a)(5) bars constitutional challenge to ICE's decision to remove Bumu); *Chocho v. Shanahan,* 308 F. Supp. 3d 772, 774 (S.D.N.Y. 2018) (Nathan, J.) (barring claim, based on alleged constitutional and statutory violations, to enjoin re-detention of  Chocho barred because any re-detention "would result from the removal order"); *Achbani v. Homan*, 3:17-cv-1512, 2017 WL 4227649, at *3-5 (D. Conn. Sept. 22, 2017) (dismissing claim, predicated on alleged constitutional and statutory violations, for an order prohibiting ICE from detaining the petitioner "in order to effectuate removal"). Likewise, § 1252(a)(5) bars a challenge to ICE's revocation of an order of supervision of an individual in anticipation of removing him.  *Leybinsky,* 2021 WL 4407829, at *4; *Andoh v. Barr*, 19 Civ. 8016, 2019 WL 4511623, at *3-4 (S.D.N.Y. Sept. 18, 2019).

ICE has detained Petitioner for the purposes of removing him. Calidonio Decl. ¶¶ 12-13; Exhibit C to Calidonio Decl. Thus, Petitioner's claim for release from detention is jurisdictionally barred by § 1252(a)(5).

### 2.  8 U.S.C. § 1252(g) Bars The Motion As A Challenge To The Execution Of A Removal Order

Another Congressionally-enacted jurisdictional bar independently precludes an order releasing Petitioner from detention. 8 U.S.C. § 1252(g) in relevant part provides that, with exceptions not relevant here, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action . . . to execute removal orders against any alien under this chapter." Section 1252(g) thereby precludes district courts from issuing an order

that would prevent or hinder ICE from executing a final order of removal. *Troy as Next Friend Zhang v. Barr*, 822 Fed. Appx. 38, 39 (2ⁿᵈ Cir. 2020).

Notably, § 1252(g) bars *all* claims challenging the execution of a removal order, so the bar is not limited to claims that challenge ICE's discretionary conduct, and therefore also includes challenges to conduct that allegedly violates federal law, including without limitation a provision of the United States Constitution. *See, e.g.*, *Reno v. Arab-American Anti-Discrimination Committee*, 525 U.S. 461, 488 (1999) (§ 1252(g) barred First Amendment challenge to deportation); *K.K.*, 2025 WL 274431, at *2 (dismissing action alleging violations of "various constitutional, statutory and regulatory provisions") (citing, *inter alia, Rauda v. Jennings*, 55 F.4th 773, 777-78 (9th Cir. 2022), *Camarena v. Director, I.C.E.*, 988 F.3d 1268, 1274 (11th Cir. 2021), *E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021)); *accord, Rodriguez*, 2023 WL 2632200, at *4; *Vasquez v. United States*, No. 15 Civ. 3946, 2015 WL 4619805, at *4 (S.D.N.Y. Aug. 3, 2015); *Barros Anguisaca v. Decker*, 393 F. Supp. 3d 344, 350 (S.D.N.Y. 2019)) "Otherwise, § 1252(g) would be a paper tiger; any petitioner challenging the execution of a removal order could characterize his or her claim as an attack on [ICE']s 'legal authority" to execute the order and thereby avoid § 1252(g)'s bar." *E.F.L.*, 986 F.3d at 965 (affirming dismissal of action that challenged, on due process and statutory grounds, the execution of a removal order).

The holdings of those decisions are fully consistent with Supreme Court case law on statutory construction. Section 1252(g) by its terms bars "*any* cause or claim" (emphasis added). The Supreme Court, in construing 8 U.S.C. § 1252(a)(2)(B) -- like § 1252(g), enacted as part of § 306 of the Illegal Immigration Reform and Immigration Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996) ("IIRIRA") -- held that "the word 'any' has an expansive meaning." *Patel v. Garland*, 596 U.S. 328, 338 (2022) (quotation omitted). *Patel's* construction of "any" in § 1252(a)(2)(B) applies with special force to the use of the same word in

§ 1252(g) because of "the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning". *See Gustafson v. Alloyd Co. Inc.*, 513 U.S. 561, 570 (1995) (internal quotation marks omitted). Thus, § 1252(g) bars any and all types of claims that challenge the execution of a removal order, including without limitation claims alleging violations of federal law.

Additional Supreme Court jurisprudence on statutory construction confirms that the § 1252(g) bar is not limited to claims that challenge ICE's discretionary conduct. Section 1252(g)'s wording contains no such limitation, and courts "may not engraft [their] own exceptions onto the statutory text." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 70 (2019). Notably, the Congress that enacted IIRIRA knew how to limit a jurisdiction-stripping statute's reach to discretionary matters when that Congress wished to do so. The aforementioned § 1252(a)(2)(B) bars challenges "to (i) any judgment regarding the granting of relief under [specified statutes], or (ii) any other decision or action . . . which is specified in this subchapter to be *in the discretion of* the Attorney General or the Secretary of Homeland Security [with one specified exception]" (emphasis added). Section 1252(g), by contrast, does *not* include any language limiting its reach to discretionary matters, and thus cannot be construed to include such a limitation. *See Hardt v. Reliance Life Ins. Co.*, 560 U.S. 242, 251-52 (2010). In *Hardt,* the Supreme Court held that a party need not be a prevailing party in order to recover attorney's fees under one subsection of a statute, because the wording of that subsection included no prevailing-party requirement, while the wording of another subsection of the same statute did include such a requirement. *Id.* The Supreme Court described the court of appeals' reading a prevailing-party requirement into the first subsection as akin to "'invent[ing] a statute rather than interpret[ing] one.'" *Id.* (quoting *Pasquantino v. United States*, 544 U.S. 349, 359 (2005) (alterations by *Hardt*); *accord Romang Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215 (2020) ("read[ing] into statutes

14

words that aren't there . . . [is] a temptation that we are doubly careful to avoid when Congress has . . . included the term in question elsewhere in the very same statutory provision"; declining to construe one subsection of a statute as requiring the plaintiff to prove intent in order to prevail because, unlike that subsection, another subsection of the same statute expressly required proof of intent). [6]

Several district courts have relied on relied in part on § 1252(g) in holding that district courts lack jurisdiction to prohibit ICE from detaining an alien for the purpose of removal. *Lin*, 2025 WL 2158874, at *3; *Ceesay*, 2025 WL 1435615, at *2; *Rodriguez* 2023 WL 2632200, at *4; *Bumu*, 2020 WL 6465433, at *2-3. Because ICE is detaining Petitioner for that purpose (Calidonio Decl. ¶¶ 12-13; Exhibit C to Calidonio Decl.) § 1252(g) provides an additional basis for the conclusion that this Court is jurisdictionally barred from granting Petitioner's motion for release from detention.

### B. Assuming, *Arguendo*, That the Court Determines That Jurisdiction Exists, Petitioner's Challenge to Detention Should Be Denied

Pursuant to 8 U.S.C. § 1231(a)(6), the Government has the discretion to detain certain categories of aliens:

> An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ....

---

[6] Accordingly, decisions that limited the § 1252(g) bar to challenges to discretionary conduct are incorrect. *Calderon v. Sessions*, 330 F. Supp. 3d 944, 955 (S.D.N.Y. 2018); *You Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 457-58 (S.D.N.Y. 2018); *Torres-Jurado v. Biden*, No. 19 Civ. 3595, 2023 WL 713898, at *2-3 (S.D.N.Y. Oct. 29, 2023); *Gondal v. USDHS,* 343 F. Supp. 3d 83, 92 (E.D.N.Y. 2018) (Spatt, J.).

8 U.S.C. § 1231(a)(6). "By its plain language, the statute does not appear to impose any limitation on the length of an alien's detention." *Qasemi v. Garland*, No. 25-CV-6020, 2025 WL 1064736, at *2 (W.D.N.Y. Apr. 9, 2025).

In *Zadvydas*, 533 U.S. 678, the Supreme Court held that detention of an alien who is subject to a final order of removal is presumptively reasonable for at least six months, pursuant to § 1231(a)(6). *See Zadvydas*, 533 U.S. at 701; *see also Clark v. Martinez*, 543 U.S. 371, 386 (2005) (applying the holding in *Zadvydas* to aliens "ordered removed who [are] inadmissible under [§] 1182"). Petitioner has been in detention *a mere six days*.

Petitioner confuses the 90–day "removal period" under 8 U.S.C. § 1231(a)(1)(A), which began when his order of removal became final in 2000, *see* § 1231(a)(1)(B), with the six-month "presumptively reasonable period of detention" under *Zadvydas*, 533 U.S. at 701, which could not have begun until he was detained by ICE in 2020. Petition ¶ 63. "This result is compelled not only by the language of *Zadvydas* but also by its logic. It is the prospect of indefinite "detention" that led the Supreme Court to create the six-month presumption." *Callender v. Shanahan*, 281 F. Supp. 3d 428, 435 (S.D.N.Y. 2017), citing *Zadvydas*, 533 U.S. at 682; *see also id*. at 689 (read "in light of the Constitution's demands," § 1231(a)(6) "does not permit indefinite detention"); *Beckford v. Lynch*, 168 F.Supp.3d 533, 536 (W.D.N.Y. 2016) ("In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling [the] apparent authorization of indefinite detention [under § 1231(a)(6) ] with 436 the Fifth Amendment's prohibition against depriving a person of their liberty without due process."). "Delays in effecting the deportation of a non-detained alien do not implicate the alien's liberty interests and thus do not raise the same 'serious constitutional concerns.'" *Callendar*, 281 F. Supp. 3d at 436, citing *Zadvydas*, 533 U.S. at 682.

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely,

16

assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.

*Zadvydas*, 533 U.S. at 699-700.

Additionally, *Zadvydas* "places an initial burden on the detainee" to establish that the "no significant likelihood" standard has been met. *Callender*, 281 F.Supp.3d at 434 (citing *Pineda v. Shanahan*, 258 F.Supp.3d 372, 379 (S.D.N.Y. 2017)). "Only if he makes this initial showing does the burden shift back to the government, which 'must respond with evidence sufficient to rebut that showing.'" *Callender*, 281 F.Supp.3d at 434 (citing *Beckford*, 168 F.Supp.3d at 539 (quoting *Zadvydas*, 533 U.S. at 701)). "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [ ] shrink[s]," *Zadvydas,* 533 U.S. at 701, but the "mere passage of time" is "insufficient," standing alone, "to meet the petitioner's initial burden to demonstrate no significant likelihood of removal." *Beckford*, 168 F.Supp.3d at 539 (collecting cases).

In order to satisfy his burden under *Zadvydas*, the petitioner must present more than "mere assertions that removal is unforeseeable." *Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009). Unsupported allegations that the relevant embassy or consulate "will not issue a travel document in the foreseeable future" are insufficient. *Callender*, 281 F.Supp.3d at 434 (citing *Juma,* 2009 WL 2191247). Nor is it sufficient for the petitioner to show that the government has been unable to obtain a travel document to date. *Callender*, 281 F.Supp.3d at 435.

Petitioner has not met his burden to demonstrate that his removal is not "foreseeable," as ICE has affirmatively stated its intent to remove Petitioner to China as soon as it receives notification that China will accept him. Calidonio Decl. ⁋ 12; Exhibit C to Calidonio Decl. p. 4. Other courts across the country have held that ICE's inability to obtain a travel document has no bearing on whether an individual's removal is "foreseeable," as that term is contemplated in

17

*Zadvydas*. *See Mattete v. Loiselle*, 2007 WL 3223304, at *4 (E.D. Va. Oct. 26, 2007) ("Even though a nation has not granted travel documents to a petitioner, or has refused to grant travel documents, [that] does not prove that a petitioner has no reasonable likelihood of being removed."). Indeed, so long as "[p]rogress, however slow, is being made" towards an alien's removal, his continued detention is in accord with due process under *Zadvydas*. *See Khan v. Fasano*, 194 F. Supp. 2d 1134, 1137 (S.D. Cal. 2001) (so long as "[p]rogress, however slow, is being made" towards an alien's removal, his continued detention is in accord with due process under *Zadvydas*).

Additional due process is not warranted because "the *Zadvydas* standard is due process," and Petitioner fails to demonstrate any exceptional circumstances to warrant departure from the *Zadvydas* standard. *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024); *G.P. v. Garland*, 103 F.4th at 902-03.

Finally, the record does not support Petitioner's claims that ICE violated its own regulations on Petitioner's revocation of supervised release and custody determinations. The *Accardi* doctrine requires federal agencies to adhere to their own procedures and regulations, particularly when these regulations affect the rights and interests of individuals. *See Montilla v. I.N.S.*, 926 F.2d 162, 167 (2d Cir. 1991); *see also Accardi*, 347 U.S. 260. Here, the evidence shows that ICE provided Petitioner with proper notice of his detention and the opportunity to challenge his detention, are contradicted by the record evidence, which demonstrates that Petitioner received the due process to which he is entitled under 8 C.F.R. § 241.13(i)(2). Calidonio Decl. ¶¶ 12-14; Exhibits C and D to Calidonio Decl. Petitioner's circumstances differ significantly from the situation presented in *Orellana v. Francis*, 2025 WL 2402780 (E.D.N.Y. Aug. 19, 2025) (Merchant, J.). In *Orellana*, Judge Merchant found that § 1252(a)(2)(B)(ii) did not preclude the Court from reviewing the lawfulness of the revocation of a grant of humanitarian parole more than

18

a year prior to its scheduled expiration date. Here, Petitioner's Order of Removal has remained in place, unchallenged, since 2000 – a period of 25 years. Calidonio Decl. ¶¶ 8-9.

## II. PETITIONER'S REQUEST FOR A STAY OF REMOVAL MUST BE DENIED

### A. The Court Lacks Jurisdiction To Consider Petitioner's Request For a Stay of Removal

#### 1. This Motion Is Jurisdictionally Barred By 8 U.S.C. §§ 1252(a)(5), 1252(b)(9) As A Challenge To Petitioner's Order Of Removal

Relying on the Second Circuit's holding that 8 U.S.C. §§ 1252(a)(5), 1252(b)(9) bar district courts from hearing direct and indirect challenges to removal orders, *Delgado*, 643 F.3d at 55, many judges in this District and other judges in this Circuit have held that § 1252(a)(5) precludes district courts from hearing a claim for a stay of removal. Some of these decisions also cite § 1252(b)(9). *Lin,* 2025 WL 2158874, at *3  (§§ 1252(a)(5) and 1252(b)(9) jurisdictionally bar, *inter alia,* motion to stay execution of removal order, even though the removal order had been issued two decades earlier and Lin had been ); *Jimenez Perez v. United States*, Nos. 25 Civ. 3400, 09 Cr.159, 2025 WL 1558578, at *3 (S.D.N.Y. June 3, 2025) (denying application for stay of removal as barred by § 1252(a)(5)); *Oriakhi v. DHS*, 762 F. Supp. 3d 183, 185-86 (E.D.N.Y. 2025) (Matsumoto, J.) (dismissing as barred by § 1252(a)(5) action in which the petitioner, *inter alia*, sought a stay of removal, *appeal pending*, No. 25-243 (2d Cir.); *Noor v. Homan*, 17-cv-1558, 2018 WL 1313233, at *3 (E.D.N.Y. Feb. 26, 2018) (Kuntz, J.) (holding that § 1252(a)(5) "bars a wide range of claims that were held to constitute challenges to removal orders, including requests for stays of removal . . ."; *Joseph v. U.S. Attorney General*, No. 17-CV-5008, 2017 WL 6001776, at *1 (E.D.N.Y. Dec. 4, 2017) (Chen, J.) ("Since District Courts cannot review removal orders, they also cannot consider requests for stays of removal."; citing § 1252(a)(5)); *Akhuemokhan v. Holder*, No. 12-cv-1181, 2013 WL 6913170, at *2 (E.D.N.Y. Dec. 30, 2013) (Bianco, J.) ("to the extent

19

petitioner . . . is seeking a stay of, or any other relief from, his order of removal, this Court lacks jurisdiction to grant such relief"; citing § 1252(a)(5)); *Royale v. INS*, No. 10-cv-2105, 2010 WL 2348651, at *1 (E.D.N.Y. June 9, 2010) (Matsumoto, J.) (district courts lack "jurisdiction to stay an order of . . . removal"; citing § 1252(a)(5)); *Scott v. Napolitano*, 618 F. Supp. 2d 186, 191-92 (E.D.N.Y. 2009) (Vitaliano, J.) (§§ 1252(a)(5) and 1252(b)(9) bar action to stay a removal order).

Relatedly, and also instructive, in *Asylum Seeker*, the plaintiff organizations challenged the validity of *in absentia* removal orders and sought, *inter alia*, a stay of removal to last until the individuals subject to those orders were given an administrative hearing on motions to vacate those orders. *Asylum Seeker* held that the claims were barred by §§ 1252(a)(5) and 1252(b)(9) as indirect challenges to removal orders because the plaintiffs' "'ultimate goal' is to challenge the removal orders themselves". *Asylum Seeker*, 409 F. Supp. 3d at 225, 227 (quoting *Delgado*, 643 F.3d at 55). Likewise, in *Barros Anguisaca*, petitioner sought an order to stay his removal pending the adjudication of his administrative motion for reopening of his removal proceedings. Citing *Delgado*, 643 F.3d at 52, and § 1252(a)(5), *Barros Anguisaca* held that "if the Court were to grant Barros [Anguisaca] the relief he seeks, 'then the Government would be without a mechanism to enforce the removal order' until such time as the [Board of Immigration Appeals] adjudicated [his] motion." *Barros Anguisaca*, 393 F. Supp. 3d at 350 (quoting *Nieto-Ayala v. Holder*, No. 08 Civ. 8347, 2011 WL 3918156, at *3, n.2 (S.D.N.Y. Aug. 30, 2011)).

Notably, the § 1252(a)(5) jurisdictional bar encompasses claims of due process violations and other violations of other constitutional provisions. *Delgado* held that § 1252(a)(5) barred, *inter alia*, a due process claim. *Delgado*, 643 F.3d at 54. Thus, several of the above-cited decisions have dismissed, as barred by § 1252(a)(5), actions alleging that the removal would violate due process. *Oriakhi*, 762 F. Supp. 3d at 185-86; *Tavares-Tejada v. Mayorkas*, No. 22-cv-918, 2022

WL 17413607, at *5 (W.D.N.Y. Dec. 5, 2022); *Asylum Seeker*, 409 F. Supp. 3d at 225-27; *Barros Anguisaca*, 393 F. Supp. 3d at 350.[7]

---

[7] The few decisions to the contrary in this Circuit are inconsistent with the Second Circuit's decision in *Delgado*. *S.N.C. v. Sessions*, 18 Civ. 7680, 2018 WL 6175902, at *4-5 (S.D.N.Y. Nov. 26, 2018), incorrectly held that § 1252(a)(5) did not bar a stay of removal during the pendency of S.N.C.'s visa application because "[t]his is not a case where permitting adjudication of [that] application *inevitably* would nullify her removal order." *Id.* at 4 (emphasis added). Yet the Second Circuit has made it clear that a lawsuit is a challenge to a removal order barred by §§ 1252(a)(5) and 1252(b)(9) even if the lawsuit seeks relief that would *not* "inevitably" nullify the removal order. Thus, in *Delgado*, the Second Circuit held that § 1252(a)(5) barred Delgado's claim for an order directing USCIS to adjudicate her waiver application, even though her removal order would not be nullified unless (1) USCIS were to grant the waiver; (2) she were to thereafter file an application for adjustment of status; *and* (3) USCIS were to approve that application. *Delgado*, 643 F.3d at 54-55. *S.N.C.*'s holding concerning § 1252(a)(5) is therefore flatly inconsistent with controlling Second Circuit authority.

*Calderon*, 330 F. Supp.3d at (S.D.N.Y.2018), held that §§ 1252(a)(5) and 1252(b)(9) did not bar a stay of removal because Calderon conceded the validity of his removal order and sought a stay only to seek a waiver of removal. *See Asylum Seeker*, 409 F. Supp. 3d at 227 (distinguishing *Calderon* on this basis). That holding is incorrect; *Asylum Seeker* criticized it by perceptively noting that "the holding . . . ultimately seems to rest on 'the fiction' that the petitioner there was 'not challenging the execution of [his] removal order[ ] by seeking to stay it'. The Court is unable (and unwilling) to indulge in that fiction here." *Asylum Seeker*, 409 F. Supp. 3d at 227 (quoting *Ashqar v. Hott*, No. 19-cv-716, 2019 WL 2712276, at *4 (E.D. Va. June 5, 2019)) (alterations by *Asylum Seeker*). *See also Lin*, 2025 WL 2158874, at *5 (criticizing *Calderon*).

*You,* 321 F. Supp. 3d at 457-58 (S.D.N.Y. 2018), held that §§ 1252(a)(5) and 1252(b)(9) did not bar that action because You's deadline to file a petition for review had expired. *Id.* at 459. Yet the text of those statutes contains no exception for cases in which that deadline has expired. Courts "may not engraft [their] own exceptions onto the statutory text". *Schein*, 586 U.S. at 70 (the Federal Arbitration Act's provision allowing parties to a contract to specify that the arbitrator can decide the threshold issue of arbitrability is not subject to an exception that allows a court to decide that issue if the argument for arbitrability is "wholly groundless" because no such exception appears in the text of the statute). For its holding concerning §§ 1252(a)(5) and 1252(b)(9), *You* relied on a portion of *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018), that represented the views of only three of the eight justices who took part in the decision of that case. That *Jennings* plurality construed § 1252(b)(9) as not barring a challenge to the length of the respondents' detention during the course of their removal proceedings because that detention did not "aris[e] from" actions taken to remove him for purposes of that statute. *Id.* at 294. The plurality stated that a contrary construction would lead to "absurd" results that would bar judicial review of claims tangentially related to the final orders of removal, such as claims for personal injuries suffered by a person while in detention during the course of removal proceedings. *Id.* at 293. Notably, the plurality opinion expressly limited its scope  by stating that it did not "provide a comprehensive interpretation of § 1252(b)(9)" and that "the respondents are not asking for review of an order of

Thus, Petitioner's motion for a stay of removal is a challenge to his removal order -- an indirect one, at the very least -- that is barred by §§ 1252(a)(5) and 1252(b)(9). *Delgado*, 643 F.3d at 55; *Asylum Seeker*, 409 F. Supp. 3d at 225; *Scott*, 618 F. Supp. 2d at 191-92.

### 2.    This Motion Is Jurisdictionally Barred by 8 U.S.C. § 1252(g) as a Challenge To the Execution of a Removal Order

Petitioner's motion for a stay of removal is also barred by the aforementioned 8 U.S.C. § 1252(g).  In *Troy*, Troy sought a stay of removal on behalf of an alien, whom ICE was allegedly seeking to remove in retaliation for his commencing an action against his employer for unpaid wages. Citing § 1252(g), the Second Circuit held that the "request for a stay was outside the [district] court's jurisdiction". *Troy*, 822 Fed. Appx. at 39-40.

Consistent with *Troy*, district courts in this Circuit have held that § 1252(g) bars claims for stays of removal.  *K.K. v. Garland*, No. 23-cv- 6281, 2025 WL 274431, at *2 (W.D.N.Y. Jan. 23, 2025), *appeal dismissed sub nom. K.K. v. Bondi*, No. 25-190 (2d Cir Apr. 8, 2025), held that § 1252(g) barred K.K.'s claim for a stay of removal until his visa applications were adjudicated. *Id.*; *accord Tavares-Tejada*, 2022 WL 17413607, at *5 (same); *Jimenez Perez*, 2025 WL 1558578, at *3 (claim for a stay of removal barred, *inter alia*, by § 1252(g)); *Oliveira Jimenez v. Searls*, No. 22-cv-960, 2023 WL 11156340, at *3-4 (W.D.N.Y. Feb. 28, 2023) (same); *Vasquez*, 2015 WL 4619805, at * 3-4  (same); *Nieto-Ayala*, 2011 WL 3918156, at *4, n.2 (same).

---

removal; are not challenging the decision to detain them . . . or to seek removal . . . and are not even challenging any part of the process by which their removability will be determined." *Id.* at 294.  As *Asylum Seeker* correctly held, the plurality's "reasoning does not preclude the application of Section 1252(b)(9), (or for that matter, Section 1252(a)(5)) to this case, where Plaintiffs seek to temporarily bar the Government from executing removal orders that it has *already* obtained, as such relief arises from the removal orders themselves". *Asylum Seeker*, 409 F. Supp. 3d at 226 (emphasis in original); *accord Tavares-Tejada,* 2022 WL 17413607, at *5. *Torres-Jurado v. Biden*, 2023 WL 713898, at *2-3, which was decided by the same judge as *You*, incorrectly construed §§ 1252(a)(5) and 1252(b)(9) for the same reasons as *You.*

Thus, § 1252(g) provides an additional basis for denying Petitioner's motion for a stay of removal.

**B.     Assuming, Arguendo, That Jurisdiction Exists, Petitioner Has Failed To Set Forth Evidence Sufficient to Justify a Stay of Removal**

While the Petition does not expressly seek a stay of removal, Petitioner's Emergency Motion for a TRO did pose such a request. There, Petitioner alleged that a stay of removal is warranted because he "was . . . working with a well-known law firm to have his conviction expunged in furtherance of his goal to one day become a United States citizen." Petitioner's TRO Mem. P. 16. In support of this assertion, Petitioner submits a letter dated September 5, 2025, from an attorney with Cravath, Swaine & Moore, who represents that Petitioner is "potentially pursuing potential post-conviction relief under the Survivors of Trafficking Attaining Relief Together Act ("START Act"), N.Y. C.P.L. § 440.10(1)(i). Exhibit 2 to Declaration of Andrew Wiktor, dated September 9, 2025 (ECF Dkt. # 6-4).

Even if Petitioner could demonstrate that he was a victim of human trafficking, he does not set forth any legal support for his suggestion that the START Act would authorize a court to expunge his conviction for a murder committed in the course of a robbery. Moreover, his "potentially pursuing potential post-conviction relief" some 28 years after his sentencing, with the

notion of becoming a naturalized United States citizen, is not a sufficient reason to impose a stay

of the Order of Removal, which has remained enforceable, and uncontested, for the past 25 years.

Dated:  September 15, 2025
       Central Islip, New York

                                         JOSEPH NOCELLA, JR.
                                         United States Attorney
                                         Eastern District of New York
                                         Attorney for Defendant
                                         610 Federal Plaza, 5th Floor
                                         Central Islip, NY 11722-4454

                 BY:         s/ Mary M. Dickman_____
                                         MARY M. DICKMAN
                                         THOMAS R. PRICE
                                         Assistant United States Attorneys
                                         (631) 715-7863/ -7893
                                         mary.dickman@usdoj.gov
                                         thomas.price@usdoj.gov

24