UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Yun CHAN,** <br><br> *Plaintiff-Petitioner,* <br><br> v. <br><br> **Judith ALMODOVAR**, in her official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; **Todd LYONS**, in his official capacity as Acting Director U.S. Immigration and Customs Enforcement; **Kristi NOEM** in her official capacity as Secretary of Homeland Security; **Pam BONDI**, in her official capacity as Attorney General; **U.S. Department of Homeland Security;** and **U.S. Immigration and Customs Enforcement**, <br><br> *Defendants-Respondents*. | Case No. 2:25-cv-05095-JS <br><br> **PETITIONER'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS PETITION FOR A WRIT OF HABEAS CORPUS** |

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

David Oliwenstein
Andrew Wiktor
Catherine Perez
Fangwei Wang

31 West 52nd Street
New York, NY 10019-6131
Tel.: (212) 858-1000
Fax.: (212) 858-1500

*Attorneys for Plaintiff-Petitioner Yun Chan*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ........................................................................................................3

ARGUMENT .................................................................................................................................3

1. MR. CHAN'S DETENTION IS A SUBSTANTIVE DUE PROCESS VIOLATION BECAUSE ICE HAS NO TRAVEL DOCUMENT FOR HIM AND NO PROSPECT OF OBTAINING ONE .................................................................................................................3

    A.  Mr. Chan has Been Detained For More Than 180 Days........................................................3

    B.  Mr. Chan Has Never Held Chinese Citizenship ...................................................................4

    C.  ICE Does Not Have a Travel Document for Mr. Chan ........................................................5

2. ICE REVOKED MR. CHAN'S OSUP WITHOUT DUE PROCESS .......................................6

3. ICE HAS NOT MADE AN INDIVIDUALIZED FINDING OF FLIGHT RISK OR DANGER ...................................................................................................................................8

4. THE COURT HAS JURISDICTION OVER MR. CHAN'S PETITION ................................9

CONCLUSION..............................................................................................................................10

Petitioner Yun Chan respectfully submits this reply memorandum of law in further support of his September 9, 2025 Petition for a Writ of *Habeas Corpus* (the "Petition").

## PRELIMINARY STATEMENT

In its opposition to Yun Chan's Petition, the Government makes a startling concession: Not only has Immigration and Customs Enforcement ("ICE") failed to obtain any travel document for Mr. Chan, it has also yet to even "complete [the] application" to initiate that process. Dkt. No. 34-1 ¶¶ 20-21. Mr. Chan's petition should be granted on that basis alone. *See Torres-Jurado v. Biden*, 2023 WL 7130898 (S.D.N.Y. 2023).

But even if the Government submits an application for a travel document for Mr. Chan, those efforts will be to no avail. As detailed in Mr. Chan's Petition and as evident based on the record, Mr. Chan is a stateless victim of human trafficking—smuggled from China to the United States by a criminal enterprise while he endured repeated sexual abuse and additional traumatic experiences. And despite the Government's sworn (but demonstrably false) assertion that Mr. Chan is a Chinese citizen, Mr. Chan has no legal status in China, and he will not be granted a travel document. LeileiLu Decl. ¶¶ 7-10. Indeed, Mr. Chan already tried to obtain travel documents at ICE's behest and was unsuccessful.

The Government's claims that it can obtain a travel document for Mr. Chan are simply fanciful. Without intervention from this Court, Mr. Chan will languish in ICE custody—bouncing around from facility to facility—while the Government chases a document it will never receive. Under these circumstances, there is no amount of process that the Government can provide Mr. Chan to justify his detention.

But it is equally clear that Mr. Chan's detention does not comport with minimum notions of procedural Due Process afforded to detainees facing removal. Mr. Chan was not provided with any notice of the Government's plans to remove him prior to his September 8 check in (at which

he appeared voluntarily), prior to his September 9 check in (at which he appeared—again—voluntarily), or following his detention. And while the Government's opposition baldly asserts that Mr. Chan was provided with the requisite interview in accordance with ICE's regulations, that claim appears nowhere in its sworn declaration. *Compare* Dkt. No. 34 at 5; *with* Dkt No. 34-1 ¶¶ 14-15. Indeed, Mr. Chan was not provided with an interview, and he also did not even receive the Notice of Revocation of Release ("NOR") until two days after he was detained.

Perhaps owing to the difficulty the Government would face if it attempted to argue that it afforded Mr. Chan due process of law, the Government devotes the overwhelming majority of its opposition to argue that the Court lacks jurisdiction. But given that Mr. Chan does not ask the Court to assess the legality of the applicable final order of removal—which Mr. Chan's counsel made clear at a hearing on September 15, *see* Sept. 15, 2025, Hearing Tr. at 21:14-22, the Government's jurisdictional challenge fails as a matter of law.

The Government, grasping for any rationale on which to base Mr. Chan's detention, has resorted to baselessly referring to Mr. Chan as "high risk." The Government's assertion is unsupported and demonstrably false. ICE did not deem Mr. Chan high risk when it released him from custody in November 2020, and there is no indication that Mr. Chan, who has made every ICE check-in since and had zero run-ins with the law, poses any risk whatsoever. Indeed, Mr. Chan has been an upstanding member of his community for the past five years—working, attending church, and satisfying all requirements under the governing Order of Supervision.[1]

---

[1] *See* Wiktor Declaration Exhibits **1** (support letter from retired partner at Cravath, Swaine & Moore LLP noting that "[s]ince his release, [Mr. Chan] has worked relentlessly to build a responsible, honest and law-abiding life"); **2** (support letter describing Mr. Chan as "upstanding, kind, diligent, and hardworking"); **3** (support letter noting that "[a]fter his release from prison in 2020, [Mr. Chan] has built a life in New York City as a law-abiding citizen"); **4 and 5** (support letters from Mr. Chan's current and former employers, respectively); **6** (support letter from United Stateless organization describing Mr. Chan as "responsive" and a "valued member of our Stateless Community"); **8** (New York State Parole Risk Assessment describing Mr. Chan as "low risk"); **9** (various letters in support of Mr. Chan's 2020 parole application); 10 (various certificates of programs Mr. Chan completed while incarcerated).

2

For the last week, Mr. Chan has been shuffled back-and-forth among ICE facilities while ICE is attempting to locate "the complete administrative file available" (Dkt. No. 34-1 at n. 1) and applying for a travel document it will never receive. Mr. Chan's detention is patently unlawful. We respectfully request that the Court order his immediate release at tomorrow's hearing.

## FACTUAL BACKGROUND

Mr. Chan has now submitted seven letters of support, including from a retired law firm partner, his current employer, and organizations from which Mr. Chan receives support, *see* Wiktor Declaration Exhibits 1-7; his New York State Parole Risk Assessment, which deems him "low risk," Wiktor Declaration Exhibit 8; and various support letters and program achievements from the time in which Mr. Chan was incarcerated, Wiktor Declaration Exhibits 9-10. Moreover, we respectfully submit three declarations. The first is from LeiLei Lu, who is a PRC law expert and has studied China's household registration system, "hokou". The second is from Professor Kate Mogulescu, who accompanied Mr. Chan to his September 9 ICE check-in at which he was detained. And the third is from Mr. Chan.

## ARGUMENT

**1.   MR. CHAN'S DETENTION IS A SUBSTANTIVE DUE PROCESS VIOLATION BECAUSE ICE HAS NO TRAVEL DOCUMENT FOR HIM AND NO PROSPECT OF OBTAINING ONE**

### A.   Mr. Chan has Been Detained For More Than 180 Days

In setting forth the six-month presumption in *Zadvydas v. Davis*, a detainee may be held until it has been determined that there is "no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. 678, 701 (2001). After six months, once a detainee shows removal is not reasonably foreseeable, the burden shifts to ICE to rebut that showing with concrete evidence. *Id*. "As the period of prior post removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

Contrary to the Government's position, the Calidonio declaration confirms that Mr. Chan has been detained for far longer than "six days." *Compare* Dkt. No. 34 at 1; *with* Dkt. No. 34-1 ¶¶ 10-11. ICE first took custody of Mr. Chan on May 22, 2020, following his release from state custody. Dkt. No. 34-1 at ¶ 10. He then remained in custody for 175 days until his release on an Order of Supervision, which took place on November 13, 2020 after ICE determined that there was no significant likelihood of removal in the reasonably foreseeable future. *Id* at ¶ 11. ICE then re-detained Mr. Chan on September 9, 2025, and Mr. Chan has remained in custody since, therefore surpassing 180 days in ICE detention with no prospect of removal. Because Mr. Chan has already spent well over six months in ICE's custody, the relevant question is whether removal is reasonably foreseeable. It is not.

### B.    Mr. Chan Has Never Held Chinese Citizenship

The Government's sworn statement that Mr. Chan is a "citizen of the People's Republic of China" is patently false. Mr. Chan has never held Chinese citizenship. Chan Decl. ¶ 1. His birth was never registered with PRC authorities, he was never issued, and he has never had any form of Chinese identity card, passport, or citizenship documentation. *Id.* He is stateless. *Id.* ¶ 6, *see also* Wiktor Declaration Exhibits 6, 7. Mr. Chan, at ICE's request, has also made efforts to obtain a Chinese passport without success. Chan Decl. ¶ 6. Specifically, at one of his check-ins, an ICE officer told Mr. Chan that he needed to try to obtain a passport. *Id.* As a result, Mr. Chan went to the Chinese Consulate to try to obtain the passport, but he was directed to apply online. *Id.* Despite these efforts, Mr. Chan was unable to complete the application because he does not have a Chinese identification number. *Id.*

Expert testimony from PRC-qualified counsel confirms what Mr. Chan has always maintained: China will not likely issue travel papers or national identification because Mr. Chan has never been registered in China's hukou system. *See* LeileiLu Decl. ¶ 10. Without hukou, a

4

person has no recognized legal identity in China, cannot obtain a passport or national identification, and is ineligible for state-provided services. *Id.* ¶ 7. The LeileiLu Declaration explains that individuals like Mr. Chan, who were born in violation of the one-child policy and never registered, are "heihu" (literally, "black registrations")—functionally stateless within China itself. *Id.* ¶ 4. Thus, individuals like Mr. Chan cannot obtain a travel document. *Id.* ¶¶ 7-9. In short, China cannot and will not issue Mr. Chan the papers necessary for repatriation. *See id.* at ¶¶ 8-9. The Government cannot credibly dispute this.

### C. ICE Does Not Have a Travel Document for Mr. Chan

Against this record, the Government admits that no travel document exists for Mr. Chan. *See* Dkt. No. 34-1 ¶ 20. Rather, Respondents claim that ICE "intends to complete" yet another application to the PRC Embassy, suggesting that since his detention, ICE has not so much as made a request for travel documents. *Id.* Respondents offer only the conclusory statement that ICE "intends to remove Petitioner to China as soon as it receives notification that China will accept him." *Id.* at ¶ 12. That is precisely the kind of boilerplate assurance *Zadvydas* rejects. Courts demand evidence of an actual likelihood of removal, not recycled promises. *See Torres-Jurado*, 2023 WL 7130898, at *4 (ICE may not revoke long-standing supervision on vague assertions like "a travel document appears forthcoming").[2]

Contrary to the Government's claim, numerous courts have held "intent" or "good faith efforts" are not enough to demonstrate removal is reasonably foreseeable. *See, e.g.*, *Vaskanyan v. Janecka*, 2025 WL 2014208 (C.D. Cal. 2025) (stateless petitioner entitled to release; speculative

---

[2] *See also Zhu v. Genalo*, 2025 WL 2452352 (S.D.N.Y. 2025) (ordering release where ICE had no viable path to removal); *Roble v. Bondi*, 2025 WL 2443453 (D. Minn. 2025) (rejecting ICE's parroted regulatory language as insufficient).

5

third-country options insufficient).³  For this reason, the Government's reliance on *Mattete v. Loiselle*, 2007 WL 3223304 (E.D. Va. Oct. 26, 2007) and *Khan v. Fasano*, 194 F. Supp. 2d 1134, 1137 (S.D. Cal. 2001) is misplaced.  In both cases, courts found detention permissible because travel documents had either already been issued (*Mattete*) or because there were no institutional barriers to repatriation (*Khan*).  Those circumstances bear no resemblance to Mr. Chan's case.

Because removal is not reasonably foreseeable, Mr. Chan's continued detention is unlawful, and he must be released.

### 2. ICE REVOKED MR. CHAN'S OSUP WITHOUT DUE PROCESS

ICE's revocation of Mr. Chan's OSUP is unlawful.  Regulations require that when ICE revokes supervised release, it must: (1) notify the individual of the specific reasons for revocation and (2) promptly conduct an informal interview to allow the person to respond. 8 C.F.R. § 241.13(i)(3).  Those protections are not formalities; they are the minimum process due when liberty is at stake.

ICE failed to comply. The NOR given to Mr. Chan *two days after he had already been detained* merely recited regulatory boilerplate language, stating that removal was "now imminent" because ICE was "acquiring a travel document."  Setting aside that the Government admits it has not yet even applied for a travel document for Mr. Chan, *see* Dkt. No. 34-1 ¶ 20; Dkt. No. 34-2 at 9, courts have repeatedly struck down such generic notices.  In *Zhu*, which involved a Chinese native subject to a final order of deportation who had been complying with his OSUP for years before ICE arbitrarily detained him, the court found that ICE violated the Due Process Clause by revoking an OSUP without providing notice or a genuine interview, ordering the petitioner's

---

³ *See also Nguyen v. Hyde*, 2025 WL 1725791 (D. Mass. 2025) (2020 Memorandum of Understanding with Vietnam did not make removal foreseeable absent evidence of actual acceptance); *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. 2025) (pending travel document request does not constitute "changed circumstances").

6

immediate release. 2025 WL 2452352 at *5 (S.D.N.Y. 2025). There, the Government was unable to obtain a travel document for petitioner who was similarly situated to Mr. Chan. *Id.* at *1.

Contrary to the Government's assertion and as supported by the NOR itself, Mr. Chan did not receive adequate notice as required by ICE's own regulations and the Constitution. Mr. Chan was detained before 9:45am on September 9, 2025, and at that time, Mr. Chan had not received the NOR. *See* Chan Decl. ¶¶ 11-12; Mogulescu Decl. ¶¶ 9-10. The NOR was seemingly issued on September 9, 2025 at 11:30am (*see* Dkt. No. 34-2), nearly two hours after Mr. had already been detained. Further, it was not presented to Mr. Chan or counsel upon detention. *Id.* Rather, two days later, on September 11, 2025, Mr. Chan received the NOR. *See* Chan Decl. ¶ 12.

The failure to provide notice was compounded by a failure to provide a meaningful opportunity to be heard—i.e., the essence of Due Process. *See generally Mathews v. Eldridge*, 424 U.S. 319 (1976). ICE failed to provide Mr. Chan with a meaningful opportunity to contest the revocation of his OSUP through an informal interview. *See* Chan Decl. ¶¶ 11-12. As noted, there have been no assertions that Mr. Chan violated a condition of release. Notwithstanding that, 8 C.F.R. § 241.4(*l*) requires the noncitizen to be notified of the reasons for revocation under paragraph (*l*)(1), *see Perez-Escobar v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2084102 at *1-2 (D. Mass. 2025)), and that such notice must provide "adequate notice of the basis for the revocation decision such that he [can] meaningfully respond at the post-detention 'informal interview,'" *id.* at *2; *see also Zhen Yi Mei v. Doe*, 2025 WL 2258586, at *10 n.19 (N.D. Ohio 2025) (observing, in case of petitioner whose release was revoked pursuant to paragraph (*l*)(2)(iii), that "there are certain procedural requirements when revoking supervision pursuant to § 241.4," including "notif[ying] [her] of the reasons for [the] revocation [and] ... her return to [ICE] custody," and "afford[ing] her an opportunity to respond to the reasons for revocation stated in the

7

notification," which "precedes a full custody review conducted 'approximately three months after release is revoked.'") (alterations and omission in original) (quoting *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 652 (D. Mass. 2018).

Here, the only evidence the Government provides that it provided an informal interview appears to be its claim that by notifying Mr. Chan, after-the-fact, that he was being detained for purposes of removal and that he was permitted to contact the Chinese Consulate (a country that does not recognize Mr. Chan's existence), that this constitutes an informal interview. *See* Dkt 34-1 ¶¶ 13-14. This belies credulity. Petitioner did not, and has not, been afforded the opportunity to meaningfully respond at a post-detention "informal interview" in clear violation of both ICE's own regulations and, as a result, the Due Process Clause of the Fifth Amendment.

Accordingly, because ICE revoked Mr. Chan's OSUP without timely notice or a meaningful interview, his detention is unlawful.

### 3. ICE HAS NOT MADE AN INDIVIDUALIZED FINDING OF FLIGHT RISK OR DANGER

Respondents contend that Mr. Chan's detention "commenced six days ago, on September 9, 2025" and therefore falls well within the six-month presumptively reasonable period under *Zadvydas*. That framing is factually and legally incorrect.

To comport with due process, detention must bear a reasonable relationship to its two constitutionally-authorized purposes—to ensure the appearance of noncitizens at future hearings and to prevent danger to the community. *See Zadvydas*, 533 U.S. at 691. The Court observed that the first justification for post-removal-period detention—risk of flight—is "weak or nonexistent where removal seems a remote possibility at best." *Id.* at 690. As for the second justification—protecting the community—the Court, observed that it has "upheld preventive detention based on dangerousness only when limited to especially dangerous individuals and subject to strong

8

procedural protections." *Id.* at 691. Where "preventive detention is of potentially *indefinite* duration," the Court has "demanded that the dangerousness rationale be accompanied by some other special circumstance ... that helps to create the danger." *Id.*

Further, the post-removal-period detention scheme contains "an implicit 'reasonable time' limitation." *Id.* at 682. That is, "[i]t does not permit indefinite detention." *Id.* at 689. The Court prescribed that the "presumptively reasonable" period of detention is six months. *Id.* at 701.

The Government seemingly concedes that Mr. Chan is neither a danger nor a flight risk. In November 2020, following nearly 180 days in detention, ICE determined that Mr. Chan was neither a flight risk nor a danger when it granted his OSUP on November 13, 2020. Nothing has changed since that time. Mr. Chan has been in full and complete compliance with the terms of his OSUP and has not violated any local, state or federal laws. There is no allegation of new misconduct, noncompliance, or public safety concerns, and the support letters and documents filed with this petition suggest just the opposite. *See* Wiktor Declaration Exhibits 1-10. Thus, Mr. Chan's re-detention cannot be justified under the purposes of supervision.

4. **THE COURT HAS JURISDICTION OVER MR. CHAN'S PETITION**

Surprisingly, the Government spends much of its brief contending that this Court lacks jurisdiction. Respondents primarily argue that this Court does not have jurisdiction to grant Mr. Chan's Habeas Petition under 8 U.S.C. § 1252(g). But Supreme Court and Second Circuit precedent make it clear that this Court does retain jurisdiction over complaints for mandamus that, like Mr. Chan's, seek to enforce non-discretionary agency action and do not challenge the validity or "execution" of an underlying removal order. *Torres-Jurado v. Biden*, No. 19 Civ. 3595 (AT), 2023 WL 7130898, at *2 (S.D.N.Y. Oct. 29, 2023) (citation omitted) (granting petitioner's motion for a stay of removal).

Section 1252(g)'s "bar on jurisdiction is 'narrow[ ],'" *Ozturk v. Hyde*, 136 F.4th 382, 396

9

(2d Cir. 2025) (alteration in original) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)), and "does not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention," *id.* at 397 (alteration in original) (quoting *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023)). Thus, "[e]ven though, '[i]n a but-for sense,' a claim of unlawful detention might arise from the government's decision to commence proceedings, adjudicate a case, or execute a removal, challenges to unlawful detention 'do not "arise from" the government's decision to "execute removal orders" within the meaning of §1252(g) simply because the claims relate to that discretionary, prosecutorial decision.'" *Id.* (quoting *Kong*, 62 F.4th at 613).

Here, Petitioner does not contest the validity of his removal order; he challenges the Government's failure to follow its own procedures and the legality of his detention. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 152 (W.D.N.Y. 2025) (explaining that "challenges to the manner in which ICE executes the removal order … are not [barred]").[4] This Court has jurisdiction, and Mr. Chan respectfully requests that the Court exercise it here.

## CONCLUSION

ICE has conceded it has not obtained, and has not even applied for, a travel document for Mr. Chan. As a stateless victim of human trafficking, China will not issue Mr. Chan identity papers, and his removal is therefore not reasonably foreseeable. ICE also failed to follow its own procedures or provide basic due process when revoking his supervision, thereby violating the Due Process Clause. Because the Government has no lawful basis to continue Mr. Chan's detention, the Court should grant the Petition and order Mr. Chan's immediate release.

---

[4] *See also Orellana v. Francis*, 2025 WL 2402780 (E.D.N.Y. Aug. 19, 2025) (evaluating petitioner's claim that the revocation of his parole violated the APA, asserted as part of petitioner's habeas petition, and finding an APA violation because respondents did not meet the statutory and regulatory standards for revocation)*; Munoz Materano v. Arteta*, No. 25 CIV. 6137 (ER), 2025 WL 2630826 at *9 (S.D.N.Y. Sept. 12, 2025) citing *Mata Velasquez v. Kurzdorfer*, 2025 WL 1953796, at *6 (W.D.N.Y. July 16, 2025) ("[Petitioner] argues that ICE violated the statutory framework as well as constitutional law when it re-detained him. That is a question that falls squarely within this Court's *habeas* jurisdiction.").

10

|  |  |
|---|---|
| Dated: September 16, 2025<br>New York, New York | Respectfully submitted,<br><br>**PILLSBURY WINTHROP SHAW PITTMAN LLP**<br><br>By: */s/ David Oliwenstein*<br>David Oliwenstein<br>Andrew Wiktor<br>Catherine Perez<br>Fangwei Wang<br>31 West 52nd Street<br>New York, NY 10019-6131<br>Tel.: (212) 858-1000<br>Fax.: (212) 858-1500<br>david.oliwenstein@pillsburylaw.com<br>andrew.wiktor@pillsburylaw.com<br>catherine.perez@pillsburylaw.com<br>fangwei.wang@pillsburylaw.com<br><br>*Attorneys for Plaintiff-Petitioner Yun Chan* |

## WORD CERTIFICATION

I hereby certify that the word count of this memorandum of law complies with the word limits of Rule 7.1 of the Local Rules of the United States District courts for the Southern and Eastern District of New York. According to the word-processing system used to prepare this memorandum of law, the total word count is 3421 words.

Dated: September 16, 2025
       New York, New York

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: */s/ David Oliwenstein*
David Oliwenstein
Andrew Wiktor
Catherine Perez
Fangwei Wang
31 West 52nd Street
New York, NY 10019-6131
Tel.: (212) 858-1000
Fax.: (212) 858-1500
david.oliwenstein@pillsburylaw.com
andrew.wiktor@pillsburylaw.com
catherine.perez@pillsburylaw.com
fangwei.wang@pillsburylaw.com

*Attorneys for Plaintiff-Petitioner Yun Chan*