**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Yun CHAN,** ) | Case No. 2:25-cv-05095 (JS) |
| ) | |
| *Plaintiff-Petitioner,* ) | |
| ) | |
| v. ) | **DECLARATION IN SUPPORT OF** |
| ) | **PETITIONER'S REPLY** |
| **Judith ALMODOVAR**, in her official capacity as ) | **MEMORANDUM OF LAW IN** |
| Acting Field Office Director of New York, ) | **SUPPORT OF EMERGENCY** |
| Immigration and Customs Enforcement; **Todd** ) | **MOTION FOR A TEMPORARY** |
| **LYONS**, in his official capacity as Acting Director ) | **RESTRAINING ORDER AND** |
| U.S. Immigration and Customs Enforcement; **Kristi** ) | **PETITION FOR A WRIT** |
| **NOEM** in her official capacity as Secretary of ) | **OF *HABEAS CORPUS*** |
| Homeland Security; **Pam BONDI**, in her official ) | |
| capacity as Attorney General; **U.S. Department of** ) | |
| **Homeland Security;** and **U.S. Immigration and** ) | |
| **Customs Enforcement**, ) | |
| ) | |
| *Defendants-Respondents*. ) | |
| ) | |
| ) | |

I, LeileiLu ("卢磊磊" in Mandarin), hereby declare as follows:

      1.      I am Leilei Lu, a citizen of the People's Republic of China (PRC) and PRC-qualified lawyer with practice experience totaling over 11 years. I have studied China's household registration system, hukou ("户口" in Mandarin) and its implications for, among other things, access to government services and programs, the ability to travel within the PRC, the ability to procure employment, and legal identity.

      2.      A copy of my CV is attached hereto as Exhibit A.

      3.      The hukou in China is a government registration system that ties every citizen of the PRC to their place of birth. The system was put in place to control, among other things, residency, access to benefits, and to restrict labor mobility. *See* Marta Bengoa & Christopher Rick, The Effect of Hukou Registration Policy on Rural-to-Urban Migrants' Health, United Nations

Univ. World Inst. for Dev. Econ. Research (UNU-WIDER) Working Paper (2018).[1] Each citizen (or household) is classified with a hukou that provides those individuals with access to social benefits—employment rights, education, healthcare, or social security—in their place of residence but restricts access to those outside of their hukou registration area. *Id.* Without a hukou, an individual does not have access to state-provided social benefits in China. Studies and official reports note that those lacking hukou are effectively excluded from the welfare system and lack legal identity.

4.      Individuals who were born in violation of China's "one-child only" policy and were unable to afford the fine payable to the Chinese government for such violation  will not be granted with a hukou. The well-known case of Li Xue is illustrative. Numerous media outlets have reported on her experiences and her family's long-running fight for her rights as a citizen due to her lack of a hukou.  She has lived in China her entire life but still has been unable to obtain a hukou to access social benefits.  People like her, known as *heihu* (literally, "black registration"), cannot access state-provided services such as education, social welfare or healthcare, and are thus marginalized in society.[2]  "Without a *hukou*, Li Xue has never spent a day in school and has had to use her relatives' ID cards to go to the hospital. Since her birth, her family ha[s] been struggling to get her a *hukou*, through petitions and legal means, over and over again." *Id.*

5.      China announced a hukou reform in 2014. At the end of July 2014, the State Council of China released its "Opinions on Further Promoting the Reform of the Hukou System," which proposes an all-out opening of hukou restrictions in towns and small cities, the opening of hukou restrictions in an orderly fashion in medium-sized cities, reasonably determining conditions for hukou registration in large cities, and the strict control of population sizes in very large cities. *See* Kam Wing Chan, Achieving Comprehensive Hukou Reform in China (2014). [3] However,

---

1 extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wider.unu.edu/sites/default/files/Publications/Working-paper/PDF/wp2018-28.pdf

2 https://www.globaltimes.cn/content/965972.shtml

3 https://www.paulsoninstitute.org/wp-content/uploads/2017/01/PPM_Hukou_Chan_English_R.pdf

"China has spent almost two decades in talking about hukou reform, but little has been achieved." *Id.*

6.     In addition, the purported hukou reform is also narrowly focused on internal migration and integration from rural into urban systems.  I am not aware of any proposed reform— let alone actual reform—that would address adults who have been removed from the United States to China.

7.     Beyond lacking access to health care, education, and other social benefits, individuals who lack hukou are unable to obtain basic identity documents or passports, as hukou is a required document for the public security bureau to issue identity documents.

8.     According to article 6 of the Passport Law of the People's Republic of China, "[w]hen applying for an ordinary passport, a citizen shall submit his or her resident identity card, hukou booklet, a recent bareheaded photograph, and materials relevant to the purpose of the application" ("公民申请普通护照，应当提交本人的居民身份证、户口簿、近期免冠照片以及申请事由的相关材料" original in Mandarin).[4]

9.     As further explained on an official Chinese local government website, "[t]o reissue a resident identity card, the individual must present his or her hukou booklet" ("如果是补办身份证，本人需携带户口本" original in Mandarin).[5]

10.     Based on my knowledge and research, I conclude that an individual returning to China without hukou would face substantial barriers to securing essential government services such as health care, employment benefits, and education.  In addition, such an individual would also likely be unable to obtain travel papers or national identification.  These obstacles would place the individual in an extremely vulnerable position upon return to China.

---

4 https://www.nia.gov.cn/n741440/n741547/c1014017/content.html

5 https://www.tjdl.gov.cn/hudong/hygq/202406/t20240620_6656583.html#:~:text=%E8%BA%AB%E4%BB%BD%E8%AF%81%E5%88%B0%E6%9C%9F%EF%BC%8C%E5%B1%85%E6%B0%91,%E9%80%9F%E5%BA%A6%EF%BC%8C%E9%82%AE%E5%AF%84%E5%88%B0%E5%AE%B6%E6%9B%B4%E4%BE%BF%E6%8D%B7%E3%80%82

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: September 16, 2025
       Beijing

                                 Leilei Lu

4

# Exhibit A



# Edward Leilei Lu
## Partner

 Beijing / Wuhan

 edward.lu@DaHuiLawyers.com

 +86 10 6535 5820



Services
- PRC Law Expert Advisory Work
- Regulatory Compliance and Investigation
- China Litigation & Arbitration
- International Arbitration & Cross-Border Litigation
- Crisis Management
- Labor & Employment

Education
- LL.B. (Wuhan University, 2014)

Admission & Certificates
- PRC Bar
- HKIAC Accredited Arbitral Tribunal Secretary Qualification
- Chinese University of Political Science and Law Advanced Bankruptcy Law Training Certificate
- Foreign-related Lawyers Talent Pool of the Beijing Lawyers Association
- Mediator of the Wuhan Yangtze International Commercial Mediation Center

Languages
- Chinese (native), English (fluent), Cantonese (conversational)

Edward is a Partner in DaHui Lawyers' Beijing office and the Managing Partner of the firm's Wuhan office. With over a decade of practice, he focuses on regulatory compliance and investigation, complex commercial disputes, and employment cases, particularly specializing in cross-border matters. He has represented Chinese and foreign clients in hundreds of cases involving Chinese litigation and arbitration, international arbitration, cross-border litigation, government investigations, internal corporate investigations, crisis management, and labor disputes.

Edward's dispute resolution capabilities have been tested in real combat. He has successfully represented clients in domestic and international arbitration cases conducted in London, Singapore, Hong Kong, Paris, Beijing, Shanghai, Shenzhen, and other seats. He has prevailed

**dahui**

in litigation across various courts across China as a trial lawyer and has acted as a leading and coordinating lawyer in a number of cross-border litigations in the courts of Hong Kong, South Africa, the United Kingdom, Canada, the United States, Dubai, Kazakhstan, the Cayman Islands, and other jurisdictions. In recent years, Edward has handled many high-profile cases, including representing a Chinese state-owned investment group in a series of corporate control disputes involving over RMB 2 billion in mainland China, Hong Kong, and the Cayman Islands, with more than 10 arbitration and litigation cases. He has successfully represented an American investment company in a series of post-acquisition Chinese litigation proceedings triggered by the scuttling of an RMB 600 million acquisition. Thanks to his profound understanding of Chinese law and practice, Edward has been invited on several occasions to provide expert opinions on Chinese law to legal proceedings outside China.

Government and internal investigations are also in Edward's wheelhouse. He has extensive experience in assisting multinational corporations and Fortune 500 companies with complex government investigations, internal investigations, public incident response, and other crisis management, covering anti-fraud, commercial bribery, non-compliant related-party transactions and trade secret infringement, advertising compliance, and labor, *inter alia*, enabling clients to avoid penalties and recover substantial losses.

Clients describe Edward as "*knowledgeable in international dispute resolution*", "*very dedicated to exploring different options and formulating various strategies for clients*", "*experienced in all types of commercial disputes including real estate, construction and energy*" and "*an expert in complex labor and employment cases*" (The Legal 500). Edward has been recognized as the A-List: Rising Star Lawyer in 2025 by China Business Law Journal and listed in The Legal 500's inaugural Arbitration Powerlist – China in 2023. In 2022, Edward was recommended by The Legal 500 in Dispute Resolution for both Litigation and Arbitration and was recognized as one of the Top 10 Outstanding Young Lawyers in China by CLECSS. Edward was also selected as one of the top 30 lawyers in LEGALBAND 30 Under 30 China in 2020.

Below are lists of selected cases and investigations Edward has led or advised on:

**Notable Representations**

*PRC Law Expert Advisory Work*

- Served as a PRC bankruptcy law expert in a bankruptcy court proceeding in the Central District of California and submitted several expert reports opining on issues of recognition and assistance of bankruptcy proceedings. The court adopted Edward's views in full, and this case is one of the rare precedents in the field of cross-border insolvency in which a U.S. court refused to recognize and assist PRC bankruptcy proceedings.

- Served as a PRC legal expert for a Chinese real-estate company in a London court litigation concerning its former executive's damage of company interests.

- Assisted a leading domestic internet company in an Hong Kong law governing HKIAC

2

**dahui**

arbitration concerning share repurchase to provide Chinese law opinions on Chinese law. Nearly USD 100 million in dispute.

*Regulatory, Compliance and Investigations*

- Represented the Chinese subsidiary of an American multinational telecommunications conglomerate in an administrative investigation initiated by Beijing branch of PRC State Administration for Market Regulation.

- Represented an Italian luxury conglomerate in multiple administrative investigations, initiated by local branches of PRC State Administration for Market Regulation in various cities, arising from several consumer complaints.

- Represented a U.S.-listed cloud communications platform provider in an investigation initiated by the PRC public security authorities against a former key Chinese employee concerning trade secret misappropriation.

- Represented a Chinese-listed medicine company in compliance investigations against its U.S. chief.

- Represented a multinational manufacturing company in compliance investigations against several executives in China and subsequent labor disputes.

- Represented a world-leading fintech company in its Chinese business restructuring and labor disputes.

- Represented a well-known international exhibition company in public crises, including a complaint from a partner arising from Covid-19.

- Represented an HKEX-listed real-estate company in multiple regulatory and investigational proceedings concerning undisclosed related transactions.

- Represented Chinese executives and a Hong Kong subsidiary of a U.S.-listed new energy company in a wire fraud case.

- Represented the Chinese subsidiary of a U.S.-listed Internet company in a series of employment and restricted stock disputes with its former Chinese executives.

- Represented the Chinese subsidiary of a U.S. manufacturing company in employee investigations and labor disputes triggered by company business restructuring.

*China Arbitration and Litigation*

- Representing an Italian trade company in an international goods sale dispute before the Guangdong Jiangmen Intermediate Court, the Guangdong High Court and the Supreme People's Court.

3

# dahui

- Represented a U.S. medical device company in a series of corporate control, intellectual property infringement, and shareholder information right disputes with former Chinese executives, involving approx. 10 court proceedings and multiple government investigations in Shanghai, Jiangsu, and Hunan.

- Represented a U.S.-listed new energy company and its Chinese subsidiary in a series of disputes arising out of the company's reorganization, including more than 10 litigations and investigations in Shandong, Guizhou, and Zhejiang.

- Represented a renowned overseas investment fund in over 10 litigations before Shanghai court and Henan courts concerning a dispute arising from a RMB 600 million cross-border M&A transaction. Approx. RMB 50 million in dispute.

- Represented a major Chinese construction company in a litigation before a Beijing court concerning a dispute arising out of a subcontracting agreement. Over USD 100 million in dispute.

- Represented a Chinese listed mining company in a litigation in a Yunnan court proceeding concerning a dispute arising out of a series of sale of goods contracts. Over USD 30 million in dispute.

- Represented a French private equity firm in litigations before Sichuan courts over a dispute arising from a share repurchase agreement. Over USD 5 million in dispute.

- Represented a U.S.-listed travel e-commerce company in defending 8 litigations brought by a professional plaintiff in Beijing, Tianjin and Shanghai, with all cases successfully resolved through judgment or settlement.

- Represented a Sino-Japanese energy product joint venture in an English language CIETAC arbitration against the U.S. counterparty arising out of a long-term cooperation agreement. Over USD 40 million in dispute.

- Represented a large China state-owned overseas engineering contractor in a CIETAC arbitration concerning disputes arising out of an EPC subcontract. Nearly USD 10 million in dispute.

- Represented a well-known Chinese e-commerce company in CIETAC arbitrations in Beijing concerning disputes arising out of a distributor purchase agreement. Over USD 5 million in dispute.

- Represented a BVI-registered European family company in an SCIA arbitration in Shenzhen concerning a dispute arising out of a share purchase agreement. Over USD 5 million in dispute.

4

# dahui

- Represented a Chinese digital advertising company in multiple SHIAC arbitrations of disputes arising out of advertising cooperation agreements. Approximately USD 10 million in dispute.

*International Arbitration and Cross-Border Litigation*

- Assisted MOFCOM to represent the People's Republic of China in defending an ICSID investment treaty arbitration claim brought by a Korean investor with complete success. Over RMB 100 million in dispute.

- Representing an U.S. investment firm and its founder in a series of corporate control disputes with its co-founders, including litigations before the courts of the PRC, the United States and the BVI. Over USD 50 million in dispute.

- Representing a Chinese state-owned company and related parties in a complex corporate control dispute against an HKEX-listed company, its founder, and a founder affiliate, involving 10 parallel litigations, HKIAC arbitrations, and investigation proceedings in mainland China, Hong Kong, and the Cayman Islands. Over RMB 2 billion in dispute.

- Represented a well-known Asian private investment fund in a share repurchase dispute with the invested Chinese company and its founders, involving an HKIAC arbitration and investigations in Mainland China. Over USD 100 million in dispute.

- Represented a Chinese listed mining company and its foreign subsidiary in a product supply contract dispute against an international commodity giant, involving an HKIAC arbitration. Over USD 100 million in dispute.

- Advised a Chinese listed mining company and its foreign subsidiary in a product supply contract dispute against another international commodity giant, involving an *ad hoc* arbitration in London.

- Represented a Chinese listed energy company in a complex oil and gas exploration dispute against the former partner, involving an LCIA arbitration seated in London and court proceedings in Kazakhstan and London. Over USD 500 million in dispute.

- Represented a Chinese listed mining company in an international sale of goods dispute against a world-renowned commodity trading company, involving a London Metal Exchange arbitration seated in London and a South African injunctive court proceeding. Over USD 30 million in dispute.

- Represented a subsidiary of a U.S.-listed company engaging in electric vehicle component manufacturing against a former partner in AAA arbitration proceedings involving complex issues of PRC bankruptcy law. Over USD 50 million in dispute.

- Represented a Chinese local governmental organ in an HKIAC arbitration seated in

**dahui**

Hong Kong concerning a dispute arising out of an investment agreement. Over USD 20 million in dispute.

- Represented a Chinese listed construction company in a SIAC arbitration in Singapore against an Egyptian counterparty concerning a dispute arising out of an international equipment supply agreement. Over USD 4 million in dispute.

- Advised the subsidiary of a Chinese listed construction company before the courts of Dubai and Sharjah in the United Arab Emirates and concerning disputes arising out of an equipment supply agreement and an agency agreement. Over USD 16 million in dispute.

**Publications**

- *Asset Recovery Series (4): Minsheng Trust v. Fu Jun – Conflicts and Breakthroughs in the Enforcement of Mainland Judgments in Hong Kong* (DaHui Lawyers Wechat Articles, July 2025).

- *Asset Recovery Series (3): Risk Management for Directors Demanding Capital Contributions from Shareholders under the New Company Law* (DaHui Lawyers Wechat Articles, March 2025).

- *Asset Recovery Series (2): Legal Risks in Managing the Joint and Several Liability of a Sole Shareholder* (DaHui Lawyers Wechat Articles, February 2025).

- *Asset Recovery Series: How Can Creditors Pursue the Liability of a Company's Actual Controller?*, (DaHui Lawyers Wechat Articles, February 2025).

- *An interview with DaHui Lawyers discussing Crisis Management in China* (Lexology, January 2025)

- "*Arbitration Versus Litigation in China – And the Winner Is?*" (Asian Dispute Review, April 2024)

**Speaking Engagements**

- Speaker, "*Working Together to Safeguard Overseas Expansion – Legal Services Salon for Foreign-related Enterprises*", Wuhan, May 2025.

- Speaker, "*International Arbitration Open Class*" (Moot Court), co-organized by HKIAC, Wuhan University School of Law, and Wuhan University Institute of International Law, Wuhan, April 2025.

- Speaker, "*Rooted in Wuhan, Oriented Toward the World: Seminar on Foreign-related Legal Services for the New Quality Development of Central China Enterprises*", Wuhan, December 2024.

**dahui**

- Speaker, "*Appeals in Fraud and Insolvency Cases: Are the Odds Stacked Against Defendants?* " Asset Recovery Asia 2024, Bangkok, November 2024

- Speaker, "*Distributor Management in the New Regulatory Environment and Discussion of the Latest Issues in Practice*", Observation on Commercial Compliance, Shanghai, July 2024

- Speaker, "*From the Perspective of the New PRC Company Law – Prevention and Response to Major Legal Risks Faced by Companies*", Wuhan, March 2024

- Speaker, "*How Do Chinese Companies Face Overseas Disputes under New Norms of International Relationships*", Quinn Emanuel Urquhart & Sullican, LLP, DaHui Lawyers, LAWPLUS, Beijing, October 2023

**Other Information**

Prior to joining DaHui Lawyers in January 2021, Edward worked for many years at top Chinese and U.S. law firms.