UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **Yun CHAN,** <br><br> *Plaintiff-Petitioner,* <br><br> v. <br><br> **Judith ALMODOVAR**, in her official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; **Todd LYONS**, in his official capacity as Acting Director U.S. Immigration and Customs Enforcement; **Kristi NOEM** in her official capacity as Secretary of Homeland Security; **Pam BONDI**, in her official capacity as Attorney General; **U.S. Department of Homeland Security;** and **U.S. Immigration and Customs Enforcement**, <br><br> *Defendants-Respondents.* | Case No. 2:25-cv-05095 (JS) <br><br> **DECLARATION** |

I, Yun Chan, hereby declare as follows:

1. I am Yun Chan, a 49-year-old man. I was born in China, but my birth was never reported to or registered with the Chinese government because at the time there was a strict one-child policy. I therefore do not have Chinese citizenship. I do not have—and have never had—any form of Chinese identification, whether that be a passport, identification number, or otherwise.

2. When I was 14 years old, I was trafficked from China to the United States by a "Snakehead" organization. The journey took more than three years, and I was subjected to many hardships, including malnourishment and sexual abuse. I even witnessed another human trafficking victim die.

3. By the time I arrived in the United States, I was 17 years old. At first, I worked long hours in a factory six days a week, but shortly thereafter, I got mixed up with my traffickers

and began committing crimes with them. At the time I was young, naïve and had no support system, but I take full responsibility for my actions.

4. During my time in prison, around 2013 or 2014, I began attending church every Sunday. I continued to go to church every week up until recently, when I could no longer do so because I had to work on Sundays. I consider myself to be a Christian. While in prison, I also achieved my GED, and I completed various other programs to learn how to be a responsible member of society.

5. Ultimately, I served more than 23 years in prison, until I was released in May 2020. At that time, I was sent to an ICE detention center in Denver, Colorado, where I was held until November 13, 2020. When I was released by ICE, I was subject to an Order of Supervision, which required me to check in with ICE periodically. I have attended every check-in since that time.

6. Because of my criminal conviction, I have thus far been unable to obtain citizenship in the United States. I am therefore "stateless," in that there is no country in which I am an official citizen.

7. Since my release, I have held a variety of jobs. Most recently, I have worked in restaurants, including at Yao Restaurant, located at 213 Pearl Street in Manhattan, New York, and currently at Yan Di Chun BBQ, located at 2042 Erie Boulevard East, in Syracuse, New York. I am law-abiding. For example, I pay taxes every year.

8. In addition to being gainfully employed, I have also been fortunate to receive legal assistance from a variety of organizations, each of which has helped me *pro bono*. For example, Cravath, Swaine & Moore LLP is helping me have my criminal record expunged to clear the way for me to apply for citizenship. As part of these efforts, people from that law firm—namely Tracy Cui, a former paralegal at Cravath—have helped me try to get a Chinese passport, which an ICE officer said I needed to do at one of my check-ins. In response to that request, I went to the Chinese Consulate to try to get a passport, but I was directed to apply online. Tracy helped me with this process, but we were unable to complete the form because I do not have a Chinese identification

number. Tracy then helped me navigate my next check-in with ICE, where I had to explain that I was unable to comply with the request, despite my best efforts.

9. In addition to Cravath, United Stateless, a non-profit organization, has provided me with services to assist me while I am a stateless individual. And most recently, Pillsbury Winthrop Shaw Pittman LLP has agreed to represent me *pro bono* in this matter.

10. My most recent ICE check-in was scheduled for September 8, 2025 at 26 Federal Plaza in Manhattan, New York. Because I am working in Syracuse, New York, I came back to New York City, where I still maintain an apartment in Queens, New York, for my check-in. I arrived at my check-in on time, and I was accompanied by an attorney. The reason I had an attorney present is because I saw on the news that ICE was detaining a large number of people, and I wanted to have someone with me to help advocate for me, if needed. Prior to that meeting, I was not provided with any specific indication that I would be detained, but because English is not my first language and because I have had difficulties during ICE check-ins in the past, I asked for help. That day, I waited in line for hours, and at around 2:30 pm an ICE official instructed me and others to return the next day. Again, I was not provided notice that I might be detained.

11. On September 9, 2025, I returned to 26 Federal Plaza, this time at approximately 5:30 am to make certain that I was able to check-in. A little while later, Kate Mogulescu, a professor at Brooklyn Law School, joined me in line. This time, we made it into the building before 9 am, and shortly thereafter it was clear that I would be detained. I had the opportunity to leave the building before I was detained, but because I follow the rules, I stayed, even though I was certain of my fate. At some point between 9 am and 10 am, I was detained and separated from Kate. No one ever told me why I was being detained, and no one ever gave me an interview.

12. Later that day, I was taken to Nassau County Correctional Facility. During my first few days there, I was denied medicine for my thyroid, liver, and sinus, even though I had brought those medications with me to the ICE check-in. On Thursday, September 11, I was briefly taken to another location for fingerprinting. While I was taken out of the prison, I was given a piece of paper called a "Notice of Revocation of Release." This was the first time I was given this

document. Again, no one gave me an interview. A little while later, I was returned to Nassau Correctional.

13. At Nassau Correctional, I met other people who were being detained by ICE. None of them, however, were detained because they voluntarily checked in with ICE, like me. The people with whom I spoke were all detained because they were caught by ICE doing something they were not supposed to be doing. I was told the same thing when I was brought to Moshannon Valley Processing Center in Pennsylvania.

14. Attached hereto as **Exhibit A** is a true and correct copy of a picture of my Order of Supervision, which shows various times that I checked in with ICE.

15. Attached hereto as **Exhibit B** is a true and correct copy of excerpts of my tax returns from 2021, 2022, and 2023. I also filed a tax return in 2024.

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

Dated: September 16, 2025　　　　　　　s/_____
　　　　　Moshannon, Pennsylvania　　　　　Yun Chan